Argued on demurrer to alternative writ of mandamus October 21; peremptory writ ordered October 24, 1941

# STATE EX REL. GALLOWAY ET AL. *v.* WATSON

(118 P. (2d) 107)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Ralph R. Bailey, James G. Smith,* and *George W. Neuner,* Assistant Attorneys General (I. H. Van Winkle, Attorney General, on the brief), for plaintiffs.

*John F. Logan* and *Frank H. Hilton,* both of Portland) James R. Bain, District Attorney, and Frank S. Sever, Deputy District Attorney, both of Portland, on the brief), for defendant.

KELLY, C. J. On application of the State, upon the relation of the members of the State Tax Commission, this court assumed original jurisdiction herein.

The question here presented is whether the defendant, who is the assessor of Multnomah county, should be required to obey an order of the State Tax Commission, the relator herein, which order is in conflict with an order of the Multnomah Board of Equalization.

The controlling statutory provisions are as follows:

Section 110-601, O. C. L. A. ''The state tax commission of the state of Oregon hereby is authorized to exercise general supervision and control over the administration of the assessment and tax laws of the state, over county assessors, and county boards of equalization, in the performance of their duties relating to taxation, and to do and perform any act, to give any order or direction to any county board of equalization or to any county assessor as to the valuation of any property, or class or classes of property, in any

county, which, in the commission's judgment, may seem just and necessary, to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the provisions of law, and equalized between all taxpayers and between the different counties of this state, and between the different taxing units, so that equality of taxation shall be secured according to the provisions of law.'' Vol. 7, O. C. L. A. p. 1160.

Section 110-603, O. C. L. A. ''The tax commission shall have the power to direct and to order any county board of equalization to raise or lower the valuation of any taxable property and to add property to the assessment list. The tax commission may require any such board of equalization to reconvene after its adjournment for the purpose of performing any order or requirement made by the tax commission and may make such orders as it shall determine to be just and necessary. If such board of equalization shall fail or refuse to comply with any order or requirement of the tax commission, the tax commission shall have power to make such correction or change in the assessment list, and such corrections and changes shall be a part of the record of the proceedings of the said board of equalization;'' * * *. Vol. 7, O. C. L. A., p. 1161.

On October 1, 1941, an order was made by the State Tax Commission requiring the Multnomah County Board of Equalization to reconvene on or before October 3, 1941, for the purpose of vacating and setting aside an original and an amendatory order at variance with an opinion theretofore rendered by the State Tax Commission, and for the further purpose of entering an order providing:

''(1) That the several assessed valuations, as of March 1, 1941, of all buildings or structural improvements of the type or kind which were or would have been assessed in 1940 at 30 per cent of appraised or estimated true cash value be reduced by 25 per cent from such assessed valuations of 1941; and

(2) That the several assessed valuations, as of March 1, 1941, of all buildings or structural improvements of the type or kind which were or would have been assessed in 1940 at 35 per cent of appraised or estimated true cash value be reduced by 10 per cent from such assessed valuations of 1941.''

Such order of October 1, 1941, by said State Tax Commission contained the following mandate:

''In the event of failure or refusal of said board of equalization to reconvene by the day specified and to enter its orders in full conformance with the order of this commission just stated, it is further

Ordered, That the aforesaid original and amendatory orders of said board of equalization shall be and hereby are set aside and declared to be of no force and effect whatever; and the assessor of Multnomah County shall be and hereby is directed and required to correct and equalize the 1941 assessment roll by reducing the assessed valuations therein of buildings or structural improvements in the respective percentages and to the same effect as hereinbefore directed to be done by order of the county board of equalization.''

On the 3rd day of October, 1941, the Board of Equalization of Multnomah county reconvened and entered an order from which we quote the concluding paragraph:

''The two members of the Board of Equalization responsible for the rulings aforesaid have carefully considered the opinion and order of the State Tax Commission, and after due deliberation of the facts and circumstances, and for the reasons set forth in its aforesaid rulings heretofore made in this matter, must and hereby does respectfully decline to accede to the request of the said State Tax Commission.''

In order to avoid any semblance of injustice to the defendant, who, undoubtedly, is a faithful public

servant, we quote excerpts from his written statement of October 6, 1941:

"When I was elected to the office of Assessor of Multnomah County, I took it to be my duty to fix assessed valuations of real and personal property in this county for ad valorem tax purposes which I proceeded to do in accordance with the established practice in vogue over a period of many years.

In April of this year the State Tax Commission issued an order requiring me to change the assessment rolls of Multnomah County from the former method used in assessing property to a system which the commission ruled was the legal statutory procedure. I was advised by the District Attorney of Multnomah County that the order of the Tax Commission was mandatory and within the authority of the Commission and that I had no personal discretion in the matter. Accordingly, after considerable work and expense, I changed the assessment rolls to conform to the order of the Commission.

On September 6th the County Board of Equalization ordered me to return to the method of assessment formerly in vogue. Later the State Tax Commission by an order dated October 1st commanded me to disregard this order of the Board of Equalization and to correct the assessment rolls by using a third and entirely different method than that set out in its order of April 21, 1941. I am now confronted with the problem of which of these three orders to obey.

*    *    *    *    *    *    *

The time for the completion of the 1941 assessment roll is growing exceedingly short and since thousands of people will be vitally affected by the proper determination of this question in a court of competent jurisdiction, it is imperative that a final solution of the problem be reached at the earliest possible moment.

In my opinion the quickest way to bring this issue to a satisfactory conclusion for all concerned, so that the matter will be settled for once and for all, is for

me to decline to comply with the Tax Commission's order of October the First. This will invite immediate court action and I believe that the court will hand down its judgment at the earliest possible moment consistent with the great public importance of the question involved. I am also of the opinion that this procedure will prevent the 1941 assessment roll from being tied up by future legal attack which might have the effect of throwing our local county government into a chaotic financial condition. Unless ordered by the court to comply with the Commission's latest order, I shall return to the assessment procedure previously employed in Multnomah County for so many years which assured the home owners of this community a reasonable consideration of their tax assessments.

If the final decision of the courts is not favorable to the people of the state, they will have the opportunity of making such corrections as they may see fit at the next session of the Legislative Assembly.''

The order of the State Tax Commission dated April 21, 1941, and referred to in the statement of defendant, as above quoted, consisted of an opinion or ruling as well as an order in the matter of the appeal of Carey Martin, as attorney for Bedell Company of Oregon, from the order of the Multnomah County Board of Equalization on his petition for reduction of assessed valuation of Lots 5 and 6, Block 174, City of Portland, Oregon, and structural improvements thereon. In said order, the State Tax Commission, ''Ordered, That the action of said board of equalization on said petition hereby is approved and the assessed valuation of said real property, as of March 1, 1939, shall remain as so equalized and appearing in the assessment and tax roll of said county.''

While in the opinion and order of the State Tax Commission of April 21, 1941, the only order which

was made is the one last hereinabove quoted, nevertheless the following statements are to be found therein:

"This is one of sixty-eight appeals originally filed by Attorney Martin, representing various property owners, from orders of the county board of equalization denying his several petitions for reductions of 1939 assessed valuations. Twenty-eight of these appeals have been withdrawn, leaving forty for the commission's consideration, grouped as follows: twenty-nine relating to assessments of real properties embracing both ground and improvements, two relating to assessments of ground only, and nine to assessments of personal properties.

These several appeals were heard at the commission's office in Salem on November 21, 1939, and further at the Court House in Portland on December 14, 1939. Attorney Martin appeared in both hearings in association with Homer Goehler, who, as it seems, had procured authorizations to represent the owners of the several properties involved in these appeals. The commission notified each of the interested property owners, or the accredited Portland agent of each such owner, of the hearing of December 14, but only one such owner or agent appeared in support of Attorney Martin's petition and appeal in his behalf."

Upon the presentation of the matter to the State Tax Commission, the petitioner's single contention was that the property classification and varied ratio system employed by the assessor had resulted in an assessed valuation on the particular property therein involved, which, in relation to its true value was somewhat above the average ratio of the assessed to the true cash value of all taxable properties in Multnomah county and considerably above the similar average ratio in respect to all taxable properties other than ground, and very substantially above the average ratio of assessed to the true cash value of tangible personal properties.

The portion of the commission's opinion, which defendant characterizes as an order, was addressed to the contention made that the varied ratio system employed by the assessor had resulted in injustice to Mr. Martin's client, and is as follows:

"Having carefully considered the evidence, arguments and exhibits submitted in connection with this appeal and likewise with Attorney Martin's other appeals, the commission is of the opinion and finds:

(1) That the property classification and varied ratio system employed by the Assessor of Multnomah County in evaluating taxable properties definitely contravenes that mandate of Oregon law, now in Section 110-101, Oregon Compiled Laws Annotated, which reads: 'All real property within this state and all tangible personal property situated within this state, except as otherwise may be provided by law, shall be subject to assessment and taxation in equal and ratable proportion.'

"It is true that Section 32, Article I and section 1, Article IX, Oregon Constitution, gives legislative authority for the reasonable classification of the subjects of taxation, but the only rule of law in Oregon in respect to assessment and taxation of real property and of tangible personal property subject to ad valorem taxation is that of equal and ratable proportion in relation to the standard of true cash value.

No county assessor or this commission has any legislative authority or function; the primary duty of each is to administer the law as it is written. If each assessor, in his own discretion, were permitted to assess ground at 75 per cent, improvements at 35 per cent and tangible personal property at 50 per cent, each in relation to true cash value, another assessor in the same county or in another county could adopt a different scheme of ratios of evaluation and even give practical exemption to some favored class of property, depending on his purely personal view of equity in the matter or his design in obtaining popular approval and support. In any such misarrangement property would not be

assessed and taxed in accordance with mandates of state-wide law, but rather under a miscellaneous assortment of personal notions of strictly local functioning.

*    *    *    *    *    *    *

(3) This commission is not unmindful of the historical significance of the varied ratio plan of evaluating different classes of taxable properties, nor does it minimize the consequences of the readjustments to accrue from the necessary abandonment of that plan. However, it distinctly does not approve or attempt to justify, for Multnomah or any other county, any rule of evaluation other than that of equal and ratable proportion in relation to true cash value, so definitely prescribed by Oregon law. In the commission's distinct and unanimous opinion that is the only sound and defensible rule any assessor safely may observe and follow."

The defendant accepted the ruling made by the commission on April 21, 1941, as a direction and order with which it was his duty to comply, and endeavored to enter all valuations of taxable properties in the 1941 assessment roll at the uniform rate of 60 per cent of true cash value as appraised or estimated by him.

On August 22, 1941, Mr. Gerard MacNamara petitioned the County Board of Equalization of Multnomah county for the correction of assessed valuation of improvements upon certain real property of which he was the owner.

Acting upon said petition, the board of equalization issued an order of September 6, 1941, dated September 3, 1941, and thereafter upon September 9, 1941, said board of equalization issued an order amendatory to its order dated September 3, 1941, wherein the following mandate appears,—

"The proposed Multnomah County assessment roll for the year, 1941, shall be corrected and equalized to

follow the general procedure previously, and for so many years, used by the assessment authorities for the County of Multnomah.''

On said September 9, 1941, the defendant, as assessor of Multnomah county, made a written request of the State Tax Commission for directions as to the procedure to be followed. The order of October 1, 1941, made by the State Tax Commission, as hereinabove stated, resulted from defendant's said request.

■ It is clear that an order, conformable to law, made by the State Tax Commission with reference to the administration of the laws of assessment and taxation when issued by the State Tax Commission and directed to a county assessor or county board of equalization, is mandatory and should be obeyed by the officer or board to which it is addressed. Section 110-601 and section 110-603, Vol. 7, O. C. L. A.

■ That being so, we are confronted with the question whether the order of October 1, 1941, conforms to the letter and spirit of the law.

We have the opinion of the State Tax Commission, as set forth in its order of April 21, 1941, tersely reflected in the following sentence of said opinion:

''However, it'' [said commission] ''distinctly does not approve or attempt to justify, for Multnomah or any other county, any rule of evaluation other than that of equal and ratable proportion in relation to true cash value, so definitely prescribed by Oregon law.''

We are advised by an allegation in the writ herein, that the defendant accepted the ruling made by the commission on April 21, 1941, and endeavored to enter all valuations of taxable properties in the 1941 assessment roll at the uniform rate of 60 per cent of true cash value as appraised or estimated by him.

We are also further advised by exhibit I attached to and made a part of the writ herein,—

"That the assessor of Multnomah County has made an honest and praiseworthy effort to place valuations on all taxable properties in the 1941 assessment roll at the uniform ratio of 60 per cent of true cash value, but that full equalization of the roll on that basis has not been possible of accomplishment within the time permitted and the facilities available for investigation and appraisal of the many thousands of properties assessed. The commission's factual investigations and studies of property assessments in Multnomah County shows that much work remains to be done to complete the undertaking to equalize valuations of all taxable properties at a uniform ratio of true cash value. Such investigations and studies indicate the equalization of the 1941 assessment roll to a uniform ratio basis will be promoted and brought nearer to actual accomplishment by correcting assessed valuations of all buildings or structural improvements, now appearing in said roll," as required by the order under consideration herein.

From these admitted facts, no other conclusion can be drawn than that the order in suit was made by the commission more nearly to approximate uniformity on a constant ratio basis of assessment than is reflected in the 1941 assessment roll prepared by the assessor.

In the face of the foregoing excerpts from the writ herein, it cannot be said that the State Tax Commission acted arbitrarily, capriciously, or other than as a result of the commission's factual investigations and studies of property assessments in Multnomah county in an effort to bring into effect as nearly as possible an assessment roll in accordance with the commission's declared construction of the law, namely, that the same should be upon an evaluation of equal and ratable proportion in relation to the true cash value.

It could be deduced reasonably from the facts thus stated in the writ that, after investigating and considering the factual situation attendant upon the defendant's effort to assess all taxable property in Multnomah county at 60 per cent of its appraised cash value, in the opinion of the State Tax Commission the defendant had assessed one class of buildings or structural improvements at approximately 80 per cent of its true cash value as determined by the commission instead of 60 per cent thereof; and that the other class, affected by the order in suit, at approximately 66 2/3 per cent of its true cash value as determined by the commission instead of 60 per cent thereof; and by complying with the order under consideration in reference to the first mentioned class and reducing the defendant's assessed valuation by 25 per cent, such property would then be assessed at 60 per cent of its appraised cash value as the commission regarded such value; and by reducing the valuation of the latter class by 10 per cent, as ordered by the commission, the same result would be attained with reference to that class, namely, that it would be assessed at 60 per cent of the appraised cash value as the commission regarded such value.

In the oral argument of counsel for the commission, it was stated that such was the case. This statement was unchallenged during the oral argument, although the suggestion was made that it was not within the record.

Manifestly, the commission's effort has been directed toward attaining uniformity; assessing all taxable property at the rate of 60 per cent of its estimated cash value would approximately accomplish such uniformity; therefore, when the reduction in the valuation from those proposed by defendant were ordered as stated upon the two classes of taxable property men-

tioned and all other property was assessed at 60 per cent of its appraised cash value and unaffected by the commission's order, it is logical to conclude that from the investigation made by the commission it was shown that as to the property not mentioned in its order, the valuation thereof was as the defendant endeavored to make it, namely, at the rate of 60 per cent of its appraised cash value; but in the opinion of the commission, as stated, the two classes of property affected by the order of the commission had not been subjected to that rate by defendant.

■ We think that, although the statute prescribes an assessment upon the cash value, such provision may be properly subordinated to an assessment upon a given percentage of cash value of the property in order more nearly to approximate uniformity. 61 C. J., Taxation, p. 118, section 45 (2), note 99, citing *Knox v. Southern Paper Co.*, 143 Miss. 870, 108 So. 288; *Knox v. L. N. Dantzler Lumber Co.*, (mem. opinion), 108 So. 290; *Bunten v. Rock Springs Grazing Ass'n*, 29 Wyo. 461, 215 P. 244.

■ As well said by Mr. Justice ROSSMAN:

* * * "it will be noticed that our constitution and statutes require relative uniformity. From Lutz Public Finance (2d Ed.), p. 529, we quote: 'After all, the fundamental task of a good assessment is that of establishing reasonable and equitable relations among the same parcels or tracts of land in an assessment district and throughout the state. Relative uniformity is, after all, the basic requirement of property valuation for tax purposes.'

All non-exempt property, regardless of use, size, shape or location, has in common the element of value and this element can be expressed in terms of money. Money value is seized upon by the state for two purposes: (a) as a basis for the distribution of the tax

burden; and (b) as the most effective means whereby relative uniformity can be secured. The second purpose is partially included in the first. The ultimate objective of appraisement and assessment is to bring about the distribution of the cost of government in just relationship to the value of each taxpayer's property. Unless the assessment exceeds the property's value the individual taxpayer is not injured by an assessment which is too high or too low, provided the same error in proportionate degree is made throughout the tax levying district. Thus, uniformity is more important to the taxpayer than appraisal in terms of the correct number of dollars." *Appeal of Kliks*, 158 Or. 669, 76 P. (2d) 974.

■ Thus, the question resolves itself into a consideration of the relation which, under the law, the State Tax Commission sustains to the county assessor and county board of equalization; and, as stated, the statute constitutes the commission a supervising agency and renders the boards of equalization and the assessors subject to its orders. Sections 110-601 and 110-603, above quoted, and sections 110-505 and 110-603, Vol. 7, O. C. L. A.; *Columbia River-Longview Bridge Co. v. Wellington, et al.*, 140 Or. 413, 13 P. 2d 1075; *People v. Pitcher*, 61 Colo. 149, 156 P. 812, Ann. Cas. 1918D, 1185; *Peninsular Power Co. v. Wisconsin Tax Com.*, 195 Wis. 231, 218 N. W. 371; *Arkansas Tax Com. v. Turley*, 185 Ark. 31, 45 S. W. 2d 859; *State v. Local Board*, 225 Iowa 855, 283 N. W. 87.

Thus viewed, the question is a simple one, namely: Should this court enforce the provision of the statute giving the State Tax Commission authority to direct the boards of equalization and the assessors in reference to the procedure involved therein?

■ It is argued that a practical construction has been given to the statute by a continued procedure in vogue

ever since the creation of the State Tax Commission, and for many years before that time, that this long continued method of assessing the property affecting the issues herein should not now be changed.

If the statute conferring authority and imposing duties upon the State Tax Commission were ambiguous in reference to directing the assessors and the county board of equalization to make such changes as are required by the order under consideration, or if the statute requiring assessments to be uniform in accordance with true cash value were ambiguous, heed should be given to the matter of contemporaneous construction thereof so long continued; but these statutes are not ambiguous or uncertain. They are plain, definite and mandatory. An unambiguous statute is not affected by the practical construction of those whose duty it is to execute it. *Twohy Bros. Co. v. Ochoco Irr. Dist. et al.*, 108 Or. 1, 18, 210 P. 873, 216 P. 189, citing Black on Interpretation of Laws, §§ 89 and 90; 2 Lewis' Sutherland Statutory Construction, § 473. See also Annotation on the subject, "Effect of practical or administrative construction of a statute on subsequent judicial construction," following the case of *United States v. Missouri Pacific Railroad Company*, Vol. 73, Law Ed. U. S. Sup. Ct. Rep. p. 322 at p. 399, where it is stated that,—

"The rule that a definitely settled administrative construction of a statute is entitled to the highest respect does not apply in cases where the construction is not doubtful. Executive construction cannot change the plain language of a statute." Citing Twohy Bros. Co. v. Ochoco Irrig. Dist. supra, and many other authorities.

■ In addition to urging that the administrative construction of the statute should be upheld rather than

the plain, unambiguous mandates of the statute, defendant also urges that because of the unsettled condition rendering property values changeable and fluctuating by reason of the war in Europe, Asia, and Africa, no change should be countenanced in the method of assessing property. We cannot ignore, amend or repeal the statute on that, or in fact any other, ground. That authority is vested in the legislative department of government. The province of the court is to construe the law. The individual taxpayer has the same remedy in case of over-assessment whether the former method is perpetuated or the one ordered by the commission is employed.

■ It has also been urged by counsel, who made the closing oral argument in behalf of defendant, that the order in suit is void because it does not appear that the commission reported the facts involved herein to the legislative assembly with the view of having the statute amended. We think that there is no merit in such argument.

■ In said closing argument, it was also urged that there is not sufficient time within which defendant may make the changes required by the commission's order in suit.

To this point, we direct attention to the statement of defendant of October 6, 1941, wherein this sentence appears,—

"Unless ordered by the court to comply with the commission's latest order, I shall return to the assessment procedure previously employed in Multnomah County for so many years which assured the home owners of this community a reasonable consideration in their tax assessments."

Certainly, it will require no more time to change the 1941 assessment roll as directed by the commis-

sion's order in suit than it would to change such assessment roll to conform to the former method of assessment.

■ Moreover, it is stated in the writ, "that said order of the commission is practicable of execution by the defendant." It is needless to add that this statement and all others in the writ are admitted by the demurrer.

■ This court is not called upon here to pass upon the wisdom or unwisdom of the law, which created the State Tax Commission as a supervising agency with authority to direct changes to be made in the assessments of property throughout the state, and require the county boards of equalization and assessors to obey the order of such commission. That question is not within the issues here. It is purely a legislative question.

For these reasons, the demurrer to the alternative writ is overruled; and, the defendant having declined to plead further, it is ordered that a peremptory writ issue directing and commanding defendant to comply with the order of October 1, 1941, made and issued as aforesaid by the State Tax Commission.

It is further ordered that neither party recover costs or disbursements herein.

Mr. Justice Brand concurs in the result.