Argued April 12, affirmed June 14, petition for rehearing
denied July 10, 1961

# REYNOLDS METALS COMPANY *v.* STATE
# TAX COMMISSION

362 P. 2d 705

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs were Robert Y. Thornton, Attorney General, and Carlisle B. Roberts, Assistant Attorney General, Salem.

*Norman J. Wiener,* Portland, argued the cause for respondent. With him on the brief were Jean P. Lowman and King, Miller, Anderson, Nash & Yerke, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

GOODWIN, J.

This is an appeal by the Oregon State Tax Commission from a decree in the circuit court in favor of the named taxpayer.

The question is simply stated:

Can the county, after making and correcting an error in the assessment of a taxpayer's property, use the individual corrective action as an excuse to deny the taxpayer the benefit of a uniform reduction in assessed valuation ordered by the county board of equalization for all other taxpayers of the same class? The trial court held that the county could not do so in this case.

Despite the voluminous record, and the substantial figures involved in the questioned assessment, we can

state our agreement with the trial court relatively briefly.

The chronology of events was as follows:

May 1, 1958, the assessor lost jurisdiction to make changes in the tax roll for the 1958-1959 tax year. ORS 308.242.

May 2, 1958, the taxpayer received notice of an assessment which was a gross departure from that of the previous year and from what the taxpayer considered to be fair.

May 16, 1958, the taxpayer filed petition with the board of equalization, because the assessor no longer had power to correct errors in the tax roll.

June 2, 1958, an informal agreement between taxpayer and assessor adjusting the assessment was reduced to a written stipulation to be presented to the board of equalization.

June 18, 1958, the board of equalization formally received the stipulation, which amounted to an agreed statement of market value for assessment purposes, as well as the consent of the assessor that the board of equalization make the changes in the tax roll which the assessor could have made on his own motion prior to May 1 of that year.

July 28, 1958, before announcing its decision in the pending case, the board of equalization ordered a blanket reduction of 20 per cent in the assessed valuation of all industrial machinery and equipment in the county. The only property here in issue is of that class.

August 19, 1958, the taxpayer filed a supplemental petition with the board of equalization asking that the publicized 20 per cent reduction in assessed valuation be applied to the taxpayer's still pending petition.

October 6, 1958, the board of equalization entered an order fixing the assessed value of the taxpayer's property in accordance with the stipulation but without giving effect to the uniform 20 per cent reduction applied to all other property of the same class in the county.

The taxpayer in due course appealed from the board of equalization to the State Tax Commission. The commission denied relief. Thereafter the taxpayer brought suit in the circuit court for Multnomah County pursuant to ORS 306.570.

■ The trial court was of the opinion that the board of equalization, and in turn the tax commission in affirming the board's action, had denied the taxpayer the equality of assessment demanded by law. Its decree required the responsible agencies to recompute the taxpayer's assessment for the tax year 1958 in accordance with the court's findings.

The record fully demonstrates that the taxpayer was denied the equality of taxation demanded by ORS 308.232 and Oregon Constitution, Art I, § 32. It is clear that if the county assessor had corrected the tax roll prior to losing jurisdiction thereof on May 1, 1958, any board of equalization order granting all similarly situated taxpayers a 20 per cent reduction in valuation would have applied to the corrected assessment of the taxpayer's property in this case. Had such a board order failed to do so, the taxpayer would have had a right to a judicial review of the board's action in singling out the taxpayer for discriminatory treatment.

Since the taxpayer learned of the overassessment of its property only after the assessor had lost jurisdiction of the tax roll, the most timely corrective action

was to proceed through the board of equalization. (The taxpayer could have chosen to pay a substantial tax under protest and wait for judicial review to run its course.) However, it was decided between the taxpayer and the assessor that the correction of the assessment was justified and that it could be made upon a stipulation of value before the board of equalization. The evidence showed that neither the assessor nor the taxpayer had any idea at the time the stipulation was entered into that the board of equalization would order a uniform reduction for all taxpayers of the same class.

When the board of equalization later ordered the reduction, the assessor refused to apply it to the taxpayer on the ground that the taxpayer had already received under the stipulation all the relief to which it was entitled. In other words, the assessor and the board of equalization viewed the stipulation as a binding declaration of market value making any other relief unwarranted.

The record is convincing, however, that the taxpayer asked for and received under the stipulation only the relief to which it was entitled as of May 1, 1958, under the assessment practices then being employed by the assessor for other property of the same class. The figures settled in the stipulation were, for all practical purposes, consistent with uniformity prior to the entry of the general equalization order granting all other taxpayers the 20 per cent reduction.

The trial court was guided by Oregon Constitution, Art I, § 32:

"* * * all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

■ This court presumes until proven otherwise that the taxing authorities have complied with the law, and that all property in the same class and district had been assessed uniformly and ratably. *Robinson et ux v. State Tax Com.,* 216 Or 532, 339 P2d 432; *Case v. Chambers et al.,* 210 Or 680, 314 P2d 256; *Tax Com. v. Consumers' Heating Co.,* 207 Or 93, 294 P2d 887; *In re GeBauer Apartments,* 170 Or 47, 131 P2d 962; *State ex rel. Galloway v. Watson,* 167 Or 403, 118 P2d 107; *Appeal of Kliks,* 158 Or 669, 76 P2d 974.

The rule announced in each of the cited cases has been invoked in favor of the Tax Commission. However, as we observed in *M & M Woodworking Co. v. Tax Com.,* 217 Or 161, 190, 314 P2d 272, 314 P2d 275, 317 P2d 920, 317 P2d 925, 339 P2d 718, and in *Case v. Chambers et al.,* 210 Or supra at 705, the rule can work both ways. Thus, if we presume that all other owners of machinery in Multnomah County at all material times were assessed ratably and equitably, and that the board of equalization intended to bring their assessments into line with other classes of taxable property in the county, then it follows that a reduction of 20 per cent from previously assessed true market value for all owners of machinery and equipment must include the taxpayer in this case.

■ The various taxing authorities make no effort to justify the denial of the uniform reduction to this one taxpayer, except to rely upon the stipulation as a binding declaration of market value. Since the law requires assessments to be based upon market value, the commission contends that the taxpayer cannot be heard to complain of the denial of the benefit of a reduction below that value. This argument begs the question of uniformity.

As this court said in *Appeal of Kliks,* supra:

"* * * Unless the assessment exceeds the property's value the individual taxpayer is not injured by an assessment which is too high or too low, provided the same error in proportionate degree is made throughout the tax levying district. Thus uniformity is more important to the taxpayer than appraisal in terms of the correct number of dollars." 158 Or at 685.

To the same effect, see *In re GeBauer Apartments,* supra, 170 Or at 49.

■ Where there is a conflict between "true" value and uniformity of assessment, the requirement of uniformity is paramount to the requirement that property be assessed at its true value. *Sioux City Bridge v. Dakota County,* 260 US 441, 446, 43 S Ct 190, 67 L Ed 340, 28 ALR 979.

While we agree that the stipulation bound the taxpayer to its declaration of market value for assessment purposes as of the time the stipulation was signed and filed, there was nothing about the stipulation to justify a denial of equality with other taxpayers when the board of equalization decided later to grant all other taxpayers a flat 20 per cent reduction. Presumably all other taxpayers already were assessed at market value without the aid of stipulation.

Affirmed with costs to the taxpayer.