RANSOM and ELINORE HENSHAW *v.* DEPART-
MENT OF REVENUE and LEONARD Z. LYON,
LESTER V. LYON and HELEN U. LYON *v.*
DEPARTMENT OF REVENUE

G. W. Kellington, Harbison, Kellington, Kellington & Davis, Medford, represented plaintiffs.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered May 29, 1973.

CARLISLE B. ROBERTS, Judge.

These two cases were consolidated for purposes of trial. The question before the court was the true cash value as of January 1, 1971, and of January 1, 1972, of Tax Lots 500, 600, 702 and 703, owned by the plaintiffs Henshaw, and of Tax Lots 400 and 704, owned by the plaintiffs Lyon, all located in Block 49-1, the Medford Shopping Center, E. Jackson Boulevard, Medford, Oregon (Assessor's Account No. 371W19CD). This is improved property but only the assessed value of the land is in dispute.

The subject property is an integral part of the Medford Shopping Center, developed by a partnership with the same name, comprising the owners of all of Block 49-1 except Tax Lot 800 in the northwestern corner of the block (approximately 297 by 506 feet) and an area in the southeast corner (measuring approximately 136 by 498 feet). All of the land is held in the name of the Medford Shopping Center except the tax lots of the plaintiffs and a number of lots owned by Guy C. and Mary Earl.

The total square feet in the Medford Shopping Center in both years was 1,228,548. It has been stipulated that the total number of square feet owned by the several parties for the two years in question was as follows:

| Owner | 1971-1972 | 1972-1973 |
|---|---|---|
| Medford Shopping Center | 844,358 | 1,086,348 |
| Guy C. and Mary Earl | 330,306 | 88,316 |
| Plaintiffs Henshaw | 29,400 | 29,400 |
| Plaintiffs Lyon | 24,484 | 24,484 |

In a prior year, 1970-1971, the plaintiffs protested the assessed valuation of their property in the Medford Shopping Center and brought to the attention of the county assessor that his records were faulty with respect to the area of land owned in the center by the plaintiffs and, incidentally, by the Earls. The corrections were made and compromises on value effected for that year. However, for the following two years, here in question, the plaintiffs' property was assessed at $3.37 per square foot on their total of 53,884 square feet while the property of the Medford Shopping Center and of the Earls was assessed at only $1 per square foot on the total of 1,174,664 square feet. The plaintiffs have paid their taxes under protest and plead that they have been subjected to unconstitutional discrimination in assessment and taxation in that no one square foot of the shopping center area can be regarded as more valuable than any other and they have been discriminated against in that their property has been assessed at 3.37 times the assessed value of other, indistinguishable property in the shopping center, all in contravention of the Oregon Constitution, Art I, § 32, and Art IX, § 1, and the Fifth and Fourteenth Amendments of the U. S. Constitution.

On the face of it, the difference in values assigned by the assessor appears to be arbitrary in the extreme. It is well understood that the development and promotion of a shopping center involves the aggregation of contiguous undeveloped properties essential for the large area which the typical design involves. The unimproved parcel may involve a number of different ownerships but the shopping center is unique in that each ownership must bear its proportionate share of the undertaking, for the benefit of all. The overall design of buildings and parking, generally, is not laid

out with respect to individual ownerships but as experience has shown to be to the best advantage of the area as a whole. Thereafter, each ownership must bear its proportionate share of the common undertaking, often including parking lot cleanup and maintenance, the common advertising, and the payment of utilities and other services that are not a part of the expense of doing business attributable to the lessees. The property of each owner is subject to easements in favor of the properties of all other owners. In this framework (the defendant having conceded that the highest and best use of the property is for a shopping center), it is difficult (although not impossible) to show that one square foot of the whole is more valuable than another.

The testimony reveals that at the time the protest was made by plaintiffs for 1970-1971, the Medford Shopping Center property had not been reviewed by the assessor for a number of years, under the reappraisal cycle (ORS 308.234). When the plaintiffs protested the assessed value and showed error in the physical descriptions of their ownerships within the shopping center, followed by the filing of an administrative appeal and a complaint in the Oregon Tax Court, the assessor recognized the need to adjust the boundaries of plaintiffs' ownerships within the center and to reassess the values.

Instead of reappraising the shopping center as a whole and allocating the values to each ownership, the assessor treated the plaintiffs' lots as if they were separate, detached and apart from the center. He found "comparable" properties in urban Medford of small business sites recently sold, establishing plaintiffs' property values by these market data. At the

same time, and in contradiction to the method used, the defendant's witness (an appraiser in the office of the county assessor) testified that the assessor's office recognized that the highest and best use of the subject property was its use as a part of the center, under Medford's C-3 zone. The contradiction is exemplified by an excerpt from the city ordinance, showing the purpose of the C-3 designation, which was placed in evidence (Dft Ex A, Item E, at VII):

> "1. <u>PURPOSE</u>
>
> "This district is intended to make provisions within the City for larger concentrations of retailing and service activity in the form of *unified shopping centers* planned and developed as *an integrated unit.* C-3 Districts shall have a minimum area of 10 acres, and shall be located where analysis of population demonstrates that such facilities are or will be required." (Emphasis supplied.)

The defendant's witness testified that the subject property was separately appraised to meet the plaintiffs' protest but that the Earl property was "incorporated with the entire shopping center appraisal." The result was that plaintiffs' property was given an assessed valuation of $3.37 per square foot, based on new data, and the rest of the property, including the Earl lots, continued to be assessed at $1 per square foot, as for some years past.

While the court grants the possibility that some part of the land of a shopping center may be more valuable than another, the defendant's effort to prove this in the present instance was not soundly based and did not carry conviction. The court can find no valid foundation for the different assessments. The testimony is clear that the adjustment for 1970-1971 was a

stopgap measure to effect the termination of a pending lawsuit and that the assessor then delayed completing the proper adjustments until they could be made under the regular reappraisal cycle when, as the witness testified, "* * * We [will] complete our study which is going to take place this fall [1973]." There is no evidence to indicate, and it is not contended, that the plaintiffs ever consented that the 1970-1971 compromise could be carried over into other years.

 The facts surrounding these two cases bring them squarely within the decision of *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 430 P2d 349 (1967), in which the court states, at 384-386:

> "While it is generally said that a taxpayer whose assessment complies with the statutes may not claim judicial relief solely because of the failure of the assessor to raise his neighbors' assessments to comply with the same law, there is an exception to this general rule. Arbitrary or systematic discrimination in assessment offends the equal-protection-of-the-law and equal-privileges-and-immunities clauses of the Fourteenth Amendment. *Sioux City Bridge v. Dakota County*, 260 US 441, 43 S Ct 190, 67 L Ed 340, 28 ALR 979 (1923).
>
> "This court has recognized that it would be wrong to strike down a correct assessment merely because one neighbor's property has been underassessed. *Robinson et ux v. State Tax Commission*, 216 Or 532, 538, 339 P2d 432 (1959). But we also noted in the same case that there is a distinction between an assessor's error in overlooking one or two properties with a resulting underassessment for the few and the situation where one taxpayer is singled out for assessment at full value while all others are left assessed at lesser values. 216 Or at 537.
>
> "* * * * *

"* * * Such discrimination also offends the uniformity clauses of our own constitution. Oregon Constitution, Art I, § 32, Art IX, § 1; *Reynolds Metals Co. v. State Tax Com.*, 227 Or 467, 362 P2d 705 (1961). * * *"

The assessed values of the subject properties for the years 1971-1972 and 1972-1973 must be reduced to $1 per square foot, the taxes for the two years corrected on the tax roll accordingly, and refund made to the plaintiffs in accordance with the provisions of ORS 311.806 and 311.812.