Submitted on briefs September 14, affirmed September 28, 1920.

# SILVERFIELD v. MULTNOMAH COUNTY.

## (192 Pac. 413.)

**Taxation—Evidence Held to Show Plaintiff Did not Own Merchandise Assessed Against Him.**

1. In a suit to restrain the collection of taxes, evidence that plaintiff had leased his place of business to another with right to purchase, and other testimony, *held* to sustain the court's findings that plaintiff did not own the stock of merchandise assessed as his property.

**Taxation—Denial of Ownership Before Equalization Board Does not Preclude Restraining Collection of Tax.**

2. An affidavit before the county board of equalization, denying that plaintiff owned a stock of merchandise assessed against him, was not an application to reduce an assessment from the board's decision on which he had a right to appeal under Section 3613, L. O. L., as amended by Laws of 1913, page .325, but was merely a denial of jurisdiction of the assessor to make the assessment, and the board's ruling did not preclude the right of the taxpayer to restrain the collection of the tax assessed against him without jurisdiction.

**Taxation—Assessment on Property not Owned Held not Maintainable as Overvaluation of Property Owned by Plaintiff.**

3. Where plaintiff admitted ownership of a few remnants of a stock of furs, an assessment against him on a valuable stock of merchandise which he did not own cannot be sustained as an overassessment on the property he did own, in which case his remedy was by appeal from the board of equalization, where the trial court in the suit to restrain collection of the tax found that the stock of merchandise assessed was not the same property as that which plaintiff admitted he owned.

From Multnomah: Robert G. Morrow, Judge.

In Banc.

This is a suit to enjoin the collection from the plaintiff of a tax based upon an assessment of merchandise and stock in trade in the City of Portland valued at $10,000, on the ground that the plaintiff does not own the property assessed, and that the assessment is void because made without any authority.

The plaintiff was formerly a merchant dealing in furs. The defendant county, of which the defendant Hurlburt is sheriff, is a municipal corporation. It is alleged that in September, 1917, H. E. Reed, as assessor of Multnomah County, intending to wrong, defraud and oppress the plaintiff and to discriminate against him, in disregard of the laws of the State of Oregon, made a tentative assessment of personal property of the plaintiff for the year 1917, and extended the same on the assessment-roll of the defendant county; that thereafter the assessor caused a written notice of such assessment and the amount and items thereof to be served upon the plaintiff, reciting that objections thereto might be made to the county board of equalization, which would meet at the courthouse on September 10, 1917; and that application for a reduction should be filed not later than September 24, 1917. It is averred that the board of equalization met at the courthouse on the date specified, and that on September 17th the plaintiff made and filed with it the following statement:

"The only merchandise I own is some old office and store fixtures and some odd pieces of furs left over from the business, and the total valuation would be about $500; and I would gladly show the same to the assessor."

This was subscribed and sworn to before the deputy assessor. The complaint then states that on March 1, 1917, the plaintiff was not in business as a furrier, and was not the owner or in possession of merchandise or stock in trade valued at $10,000 or any other amount; that the only personal property owned by him which was subject to taxation is evidenced by an attached itemized list, totaling $500; and that the assessor did not exercise any judgment

or discretion in fixing the valuation of the alleged merchandise and stock in trade, did not view the same or make any application to the plaintiff for such purpose, and did not request him to furnish or swear to a list of his personal property liable to taxation, but arbitrarily and without any evidence, in disregard of the facts, made the assessment of $10,000 on merchandise and stock in trade. The complaint further charges that at the request of the assessor the board of equalization approved the assessment; that its action was taken without any investigation or the taking of any testimony; that no notice of the time for appearing was ever given to the plaintiff, who relied upon receiving the same; that he had no opportunity to be heard or to offer evidence as to the truth of his claim; that the board continued in session from September 10 to October 3, 1917; and that thereafter the alleged assessment was carried upon the tax-roll and delivered to the sheriff for collection. The plaintiff admits his ownership of an automobile of the assessed value of $560, odds and ends of furs assessed at $286, and fixtures and furniture valued at $214, upon which was due a tax of $30.42, the amount of which he tendered prior to the bringing of this suit, and prays for a decree restraining the collection of the tax based upon the attempted assessment of personal property at a valuation of $10,000, or any portion of it. Copies of the assessment, with the verified statement of the plaintiff, are attached to and made a part of the complaint.

After denying the material allegations of that pleading the answer alleges that on March 1, 1917, the plaintiff was the owner of merchandise and stock in trade of the value of $10,000. As a second fur-

ther and separate answer it is alleged that the board of equalization met on September 10th; that the plaintiff by verified petition made application for a reduction of the assessment, which was denied; that no appeal was ever taken from that order; and that the court has no jurisdiction of the subject matter of the suit. The answer concludes with a request that the suit be dismissed.

The plaintiff denies all of the new matter in this pleading.

Testimony was taken, from which the court found in substance: First, that on March 1, 1917, the plaintiff was not the owner of and was not in possession of merchandise and stock in trade in the sum of $10,000 or any other amount; second, that the assessment of $10,000 therefor for that year "did not include, and was not intended to include, any portion of the personal property described in paragraph VII of the plaintiff's complaint"; third, that the assessor of Multnomah County was without jurisdiction to make such assessment for the year 1917 in the sum of $10,000, or any other sum, "for merchandise and stock in trade," and that the same was null and void; and fourth, that the board of equalization had no jurisdiction to approve the assessment or to pass upon the right of the assessor to make it, and that no appeal from the action of the board was necessary to protect the plaintiff's rights in the premises. Based upon these findings, the court rendered a decree enjoining the collection of any portion of the tax based upon the $10,000 assessment, from which the defendants appeal.                    AFFIRMED.

For appellants there was a brief submitted over the names of *Mr. Walter H. Evans*, District Attor-

ney, and *Mr. George Mowry,* Deputy District Attorney.

For respondent there was a brief prepared and submitted by *Mr. J. F. Boothe.*

JOHNS, J.—The defendants vigorously contend that equity does not have jurisdiction of this suit, and that is the vital question presented. Under the statute, the assessor not only has the power, but it is his official duty, to assess all property in his county as of March 1st of each year. However, he has no legal right to assess property to another which the latter does not own, have in his possession or control. The ownership of the $10,000 worth of merchandise and stock in trade was made an issue, the plaintiff claiming that he did not own the property, and the assessor alleging that he did. On that issue of fact the Circuit Court found for the plaintiff.

1. It appears that the plaintiff was formerly in the fur business at 286 Morrison Street in the City of Portland; that he discontinued that business in the latter part of 1916 or early in 1917, "right after the holiday trade." On December 20, 1916, he executed a lease of all of his fixtures to E. Blank for a period of two years, at stipulated monthly payments, with the proviso that if all of them were made as they matured, Blank should become the owner of the property. The latter took over the fixtures, remained in possession under his lease and made his payments.

For several years the plaintiff had been assessed on his merchandise at that place of business at a valuation ranging from $20,000 to $30,000, and had paid all previous taxes, but he was not assessed on

any stock for the year 1916, because he had disposed of all of it and retired from business. Section 3591, L. O. L., as amended by Chapter 184, Laws of 1913, reads thus:

"Every assessor shall require any person liable to be taxed in his county and to be assessed by him, and the managing agent or officer of any firm, corporation or association liable to be taxed in his county and to be assessed by him, to furnish such assessor: * *

"A list of all of the personal property of such person, firm, corporation or association liable to be taxed in his county; which list shall include a statement to be made by such person, * * showing the true cash value of such personal property, or of the several items thereof, owned by such person, * * or in which such person * * has any interest.

"The assessor shall require such person * * to make oath that, to the best of his knowledge and belief, such list * * contains a full and true account of all the * * personal property, * * or of any interest therein, of such person, * * liable to be taxed in said county, and the true cash value * * thereof. Should any such person * * when so required, refuse to furnish such list of * * personal property, with the true cash value or values thereof, or to swear to the same when required to do so by the assessor, such person * * shall forfeit and pay to the assessor, for the use of the county, the sum of $100. * * Should any such person, * * when so required, refuse to furnish and to swear to any such list, 'the assessor shall ascertain the taxable property of such person, * * and shall appraise the same from the best information to be derived from other sources. Upon the failure of any such person * * to make such valuation or valuations, the assessor shall be deemed to be the authorized agent of such person * * for the purpose of making said valuation or valuations, and the same, as given in the assessment roll, shall have the same force and effect

as if made under oath by said person. * * The assessor may increase any valuation made by any such person * * for purposes of assessment and taxation.''

Although the date is not given, it appears that at one time an assessment blank was mailed to the plaintiff, and on June 19, 1917, the wife of the plaintiff verified a list before the deputy assessor, wherein it appeared that the only property of the plaintiff was an automobile of the value of $560. On September 8, 1917, the assessor levied an assessment against the plaintiff on merchandise and stock in trade valued at $10,000, and on the automobile at $560. It is evident that this was done without any notice or warning to the plaintiff or requiring him to make an oath as above provided. It is not shown that he refused to furnish a list of his personal property subject to taxation, that he was required to do so by the assessor, or that he refused to swear to such list. But, acting on information ''derived from other sources,'' the assessor assumed that the plaintiff was the owner of the property in question, and that he should be assessed for it.

On September 17, 1917, the plaintiff made and filed the above verified statement to the effect that the only personal property which he owned, consisting of some old store fixtures and odd pieces of fur, was valued at about $500, and therein declared his willingness to exhibit those articles to the assessor. Nothing more was done concerning the assessment, by either the assessor or the plaintiff. It is conceded that the notice of the meeting of the board of equalization was duly published. There is no proof that the plaintiff was ever personally notified of the specific time when the board would act on the $10,000

assessment. The fact remains that the only record before the board was the assessment as originally made, to which was attached the plaintiff's affidavit above noted. The plaintiff testified positively that he did not own or control any merchandise in Multnomah County during that year, to the value of $10,000 or any part thereof, and there is no evidence on the part of the defendants tending to show that he was such owner. The trial court found that he was not, and the evidence sustains the finding.

If the plaintiff was not the owner of the property, it must follow that the assessor did not have authority to make the assessment complained of, and that unless the plaintiff had waived or lost his legal rights the board of equalization did not have any jurisdiction over it.

2. It is contended by defendants that by making and filing the affidavit the plaintiff submitted to the jurisdiction of the board and is bound by its ruling. It will be noted that the original assessment was made on September 8th; that the board met on September 10th; and that the affidavit was filed on September 17th. In other words, the assessment was made, not before, but during the period of publication of notice to property owners of the time and place of the meeting of the board of equalization. Section 3605, L. O. L., as amended by Chapter 184, Laws of 1913, requires each assessor to give "three weeks public notice in some newspaper," of the meeting of the board, and to state therein that at such meeting the board "will attend at the courthouse in his county, and publicly examine the assessment-rolls, and correct all errors in valuation, description or qualities of lands, lots or other property assessed by such assessor; and it shall be the

duty of persons interested to appear at the time and place appointed."

Section 3613, L. O. L., as amended by Chapter 184, Laws of 1913, reads as follows:

"Any person who shall have petitioned for the reduction of a particular assessment, or whose assessment has been increased by the board of equalization, * * may appeal therefrom to the Circuit Court of the county."

The defendants insist that the plaintiff had a legal remedy by an appeal from the decision of the board. When analyzed, the affidavit of the plaintiff, which was addressed to the board, is not made for the purpose of correcting an error in valuation or description of property, "for the reduction of a particular assessment," an increase or a decrease in assessment. It was a showing to the effect that the plaintiff was not the owner of the property or any part of it, upon which the $10,000 assessment was made.

The facts in the case of *Searing* v. *Heavysides*, 106 Ill. 85, are almost identical with those in the present instance, and it was there contended that there was an adequate remedy at law. The court held:

"Where an assessor assesses personal property against one who was not the owner of the same on the first day of May, in the year for which the assessment is made, and who had no possession or control over the same at that time, and had no interest therein, the taxes levied on such assessment will be without warrant of law; and if the town board of review and county board refuse to give relief on application and proof, a court of equity will restrain the collection of such tax."

The opinion of this court in *Portland University* v. *Multnomah County*, 31 Or. 498 (50 Pac. 532), speak-

ing of the authority of the board of equalization, says:

"And so it is with other corrections of the rolls which it is intrusted with the power to make. But where it is without jurisdiction or authority to act in the premises, it is useless to appeal to it for relief, as its orders pertaining thereto would prove absolutely nugatory and of no avail.

"Touching the assessor's authority, it appears that he has no jurisdiction to assess land or other property exempt from assessment and taxation, and his action in the premises in determining that it is not used or occupied so as to bring it within the exemption is not conclusive, the fact being one on which jurisdiction depends. The question as to whether property is assessable under the statute is jurisdictional, and therefore open to inquiry, whenever the authority to make an assessment is asserted, notwithstanding the assessor has exercised his judgment thereon."

There the question involved was the right to assess property exempt from taxation. Here, the question is the right to make an assessment against an individual for property which he does not own or control.

3. In their reply brief the defendants claim that the assessment in question was not made upon non-existing property, and that the most that could be said against it would be that it was upon an excessive valuation. As found by the trial court, the $10,000 assessment was made upon other property than that owned by the plaintiff, and was a separate and distinct assessment from that upon the property which he did own. Under the facts, the question of an excessive valuation as to the $10,000 assessment is not involved, but it is the making of an assessment

against the plaintiff upon property which he did not own or control. We approve all of the findings of fact made by the Circuit Court and affirm the decree.

AFFIRMED.