Argued February 13; reversed March 5; rehearing denied
April 2, 1946

MOE *v.* PRATT, SHERIFF
(166 P. (2d) 479)

*Stanley Jones,* Deputy District Attorney, of Portland (with T. B. Handley, District Attorney, of Portland, on the brief), for appellant.

*George R. Goodrich,* Assistant Attorney General (with George Neuner, Attorney General, on the brief), for appellant.

*James G. Smith,* of Portland (with Maguire, Shields & Morrison, of Portland, on the brief), for appellant.

*Ashley Greene,* of Portland (with W. W. Banks and B. G. Skulason, both of Portland, on the brief), for respondent.

KELLY, J.

◼ The first paragraph of plaintiff's brief is as follows:

> "This cause is before this court on a second notice of appeal filed after a first notice was abandoned by failure to file a transcript within the time required by law. This court has held repeatedly that the filing of a transcript within the time fixed, or some legal extension thereof is jurisdictional, and that the failure to effect an appeal in such manner exhausts the right to appeal. Plaintiff's motion to dismiss nevertheless was denied without opinion. In the hope the court will clarify the rule invoked plaintiff herewith respectfully renews his motion to dismiss for failure to file a transcript within thirty days from the giving of notice of appeal."

When plaintiff's motion to dismiss defendant's appeal was before this court, consideration was given to an affidavit made by the attorney who presented plaintiff's oral argument when this case was heard by this court on its merits. In that affidavit, it is stated

that plaintiff's attorney prepared the decree entered by the trial court containing a recital that notice of appeal was given in open court. It also appears from said affidavit of plaintiff's attorney that oral argument upon defendant's demurrer to plaintiff's complaint was waived and the cause was submitted upon briefs and that the form of the decree so prepared was discussed in the office of the deputy district attorney and approved by that officer who was then of counsel for defendant. The terms of said affidavit clearly disclose that no oral notice of appeal in open court was ever given in this case by defendant or any attorney for defendant. There is no authority for substituting an oral agreement out of court for an oral notice of appeal in court and hence this court came to the conclusion that the only notice of appeal given in the instant case is the written notice. For this reason, plaintiff's motion to dismiss defendant's appeal was denied. For the same reason this court now adheres to that ruling.

Plaintiff's complaint contains a recital of the following facts: That at all times mentioned therein defendant was and is the duly elected and acting sheriff and tax collector in and for Multnomah County, Oregon.

That on July 1, 1942, and until on or about June 23, 1943, the county of Multnomah was the owner of the real property in suit; that the assessor of Multnomah County listed said real property on the 1943-44 assessment roll, made as of January 1, 1943, showing it exempt and owned by the county of Multnomah.

That on or about June 23, 1943, the county of Multnomah entered into a contract for the sale of said real

property to the plaintiff, which contract is in full force and effect.

That on or about July 15, 1943, said assessor without notice to plaintiff, altered the aforesaid assessment roll to show a purported assessment, set a valuation of $16,835.00 on the said real property, listing plaintiff as the owner thereof as of January 1, 1943, and caused a tax of $739.06 to be extended thereon and added to the 1943-44 tax roll of said county.

That on or about October 15, 1943, the said tax roll, with a warrant for collection thereof, was delivered to the defendant for collection.

That on or about December 16, 1943, the assessor cancelled the purported assessment and the defendant corrected the said tax roll to eliminate the tax and show ownership in Multnomah County; and that the defendant now threatens to restore the purported assessment and tax to said tax roll, or to make a new assessment of the said real property and extend a tax thereon for 1943-44 and to collect the same to the irreparable damage of plaintiff, and will do so unless restrained by this court.

To this complaint a general demurrer was interposed. The trial court overruled said demurrer and defendant declined to plead further, whereupon the trial court entered a decree in conformity with the prayer of plaintiff's complaint.

■ It is urged that there is no provision of law in this state by which a tax may be levied and enforced for any fiscal year against property which on January 1, immediately preceding the fiscal year, was exempt from taxation even though as in the instant case before July 1 of that year, the ownership of such property

became vested in an individual and therefore was no longer exempt from taxation.

This argument necessitates a consideration of several statutory provisions.

First, the policy of the taxation system affecting real property and tangible property is stated in section 110-101, O. C. L. A., thus:

> "All real property within this state and all tangible personal property situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion." Oregon Laws 1941, chap. 440, section 1, p. 754.

That provision of the statute dissipates all thought that the real property in suit was not taxable for the fiscal year in suit and no claim to that effect is urged by plaintiff.

The fiscal year during which tax liens are effective begins on July 1 of the calendar year. Such is the mandate of section 110-829, O. C. L. A., as amended, which in so far as it is pertinent hereto, is as follows:

> "All taxes lawfully imposed or levied on real or personal property, * * * shall be and hereby are declared to be liens on such real and personal property, respectively. Taxes on real property shall be a lien thereon from and including the first day of July of the year in which they are levied until paid and, except as otherwise specifically provided by law, such lien shall not be voided or impaired. *Real property subject to* taxation on July 1 shall remain taxable and taxes levied thereon for the ensuing fiscal year shall become due and payable, notwithstanding any subsequent transfer of said property to an exempt ownership or use * * *." Oregon Laws 1941, chap. 440, sec. 27, pp. 767-8, amending section 110-829, O. C. L. A.

Two provisions contained in the last sentence above

quoted are relevant to the question before us, (1) that real property subject to taxation on July 1 remains taxable for the ensuing year; and (2) that the year ensuing is the fiscal year.

The only question then is whether or not there is any statutory provision for taxing real property which has not been properly assessed by the assessor, it being obvious that after the custody of the assessment roll for the fiscal year of 1943-44 had passed to the sheriff and tax collector, the assessor had no authority to add omitted property thereto and charge it and the owner thereof with the proper amount of taxes thereon.

Authority to correct the assessment or tax roll in that respect is conferred by the statute upon the officer having possession of the roll. In the instant case, the defendant herein as sheriff and tax collector is the officer having possession of such roll and is expressly given such authority.

We quote the following excerpt from Section 110-820, O. C. L. A.:

" * * * whenever, at any stage in the collection of taxes, the officer having charge of the rolls shall discover errors or omissions of any kind therein, he may properly correct the same to conform to the facts in whatever manner may be necessary to make such assessment, tax or other proceeding whatsoever regular and valid, such correction to be made in red ink, or otherwise distinguished, and to be signed with the initials of the officer making the same and the date of such correction."

Section 110-821, O. C. L. A., is as follows:

"Whenever, after the return of the assessment roll to the county assessor by the board of equalization, the officer having the possession of the roll shall discover or receive creditable information, or

if he has reason to believe that any real or personal property has, from any cause, been omitted, in whole or in part, in the assessment of any year or number of years not exceeding five years prior to the last roll so equalized and returned, or from the assessment roll or the tax roll, he shall proceed to correct the assessment or tax roll in his hands, and add such property thereto, with the proper valuation, and charge such property and the owner thereof with the proper amount of taxes thereon at the rate which the said property would have been taxed had it been properly upon the tax roll for the year or years as to which it was omitted; to enable which offer [officer] so to do he is hereby invested with all of the powers of the assessor, board of equalization and county clerk under the laws in force during such years and thereafter. But before making such correction or additions, if the persons claiming to own said property, or occupying it or in possession thereof, resides in the county and is not present, such officer shall give such person notice in writing of his intention to add such property to the assessment or tax roll describing it in general terms, and requiring such person to appear before him at his office at a specified time, within five days after giving such notice, and to show cause, if any, why such property should not be added to the assessment and tax roll; and if the party so notified does not appear, or if he appears and fails to show any good and sufficient cause why such assessment shall not be made, the same shall be made, and the officer making the correction or addition shall file in his office a statement of the facts or evidence on which he made such correction. The notice in this section provided may be given and served in the same manner and by the same persons competent to serve subpoenas. Appeal may be taken from the action of the officer in making the correction or addition by the person aggrieved within ten days after the action of such officer is taken, by giving notice to

such officer and otherwise proceeding in the manner providing for appeals from the board of equalization." Vol. 7, O. C. L. A. Section 110-821, pp. 1185-6.

Plaintiff contends that by virtue of sections 110-301 and 110-335, O. C. L. A., as amended, there is no method prescribed by statute by which real property, passing from exempt ownership to a taxable ownership subsequent to January 1, may be subjected to taxation for the fiscal year next ensuing.

Section 110-301, as amended, is as follows:

"The assessor of each county shall, immediately after the first day of January of each year, obtain from the state land board, from the world war veterans' state aid commission and each other state agency holding title to real property, and from the local United States land office, lists of public lands sold, or contracted to be sold, and of final certificates issued for lands in his county during the year ending at 1 o'clock a. m. of the said first day of January, and shall place such lands upon the assessment roll. It shall be the duty of the state land board, of the world war veterans' state aid commission and of each other state agency holding title to real property to certify to the assessor a list or lists of all public lands in the county sold by it, or contracted to be sold, during such year." Oregon Laws, 1941, chap. 440, sec. 3, p. 756.

This section does not purport to prescribe an exclusive method of assessment. It merely authorizes the assessor to procure, and requires the state agencies mentioned to provide, certain information.

In so far as pertinent to the contention of plaintiff, section 110-335, O. C. L. A., as amended, is as follows:

"The assessor shall procure for the county a blank assessment roll, and forthwith proceed each year to assess the value of all taxable property

within the county, except *such as by law is to be otherwise assessed.* (Italics supplied) Said assessor shall enter in such assessment roll a full and complete assessment of such taxable property, including a definite description of the real property owned by each person therein named, on January 1 of said year, at the hour of 1 o'clock a. m." Excerpt from section 110-335, O. C. L. A., as amended by section 4 of chapter 440, Oregon Laws 1941, pp. 756-7.

Certainly section 110-335, O. C. L. A., as amended, does not provide an exclusive method of assessment. On the contrary, it expressly recognizes that there may be property that by law is to be otherwise assessed.

Manifestly, property exempt from taxation while the assessment roll for a given fiscal year is in the custody of the assessor may become, as in the case at bar, by reason of a transfer to taxable ownership, property that "by law is to be otherwise assessed".

Bearing in mind that this case is before us only upon a general demurrer to plaintiff's complaint which, in so far as indicating the proposed course sought to be employed, merely admits

"that the defendant now threatens to restore the proposed assessment and tax to said tax roll, or to make a new assessment of the said real property and extend a tax thereon for 1943-44 and to collect the same",

we are not confronted with any question affecting the validity of a tax already imposed or of a sale thereunder; but merely with the question herein discussed, namely, whether there is any statutory authority for correction of the assessment roll by the sheriff and tax collector, while such officer has the possession of such roll, by adding such taxable property thereto as has for any cause been omitted in whole or in part therefrom.

We think the provisions of section 110-821, O. C. L. A., as amended, confer such authority and that authority is not abridged, minimized or revoked by any other provision of the statute.

For this reason the demurrer to plaintiff's complaint should have been sustained.

The doctrine of the case of *Portland v. Multnomah Co.*, 135 Or. 469, 296 P. 48, cited by plaintiff, is to the effect that no valid and enforceable lien is upon land owned by the city of Portland prior to March first. That case was controlled by the statute then in force, which provided that—

> * * * "The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid." Section 69-722, Oregon Code 1930.

As above stated, the statute applicable to the instant case substitutes July 1 for March 1 as the initial date of the tax lien, and expressly provides that real property exempt from taxation on July 1 shall remain exempt for the ensuing fiscal year notwithstanding any transfer within such year to a taxable ownership or use.

Following the procedure prescribed by the legislature in section 110-821, O. C. L. A., complies with the rule announced in *Clark & Wilson Lumber Co. v. Weed*, 137 Or. 186, 2 P. (2d) 12, cited by plaintiff, to the effect that, when the legislature determines the method or mode of levying a tax such procedure must be strictly observed. *Dant & Russell, Inc. v. Pierce, et al.*, 122 Or. 337, 255 P. 603, seeks to enjoin payment of additional or supplemental tax. *City of Eugene v. Keeney*, 134 Or. 393, 293 P. 924, holds that certain real property owned by the city of Eugene was not exempt from taxa-

tion. *Guthrie v. Haun,* 159 Or. 50, 76 P. (2d) 292, holds that failure of assessor to assess separately each lot numbered from 7 to 21 inclusive, in Block B in Sproston's Addition to the city of Wallowa did not invalidate the tax thereon. *Martin v. White,* 53 Or. 319, 100 P. 290, holds a tax title void because of insufficient description of the property and assessment in the name of one other than the true owners. *Silverfield v. Multnomah County,* 97 Or. 483, 192 P. 413, affirmed a decree of the trial court enjoining the collection from the plaintiff of a tax based upon a purported assessment of merchandise and stock in trade, the ground upon which the injunction was ordered being that plaintiff was not the owner or in possession of said merchandise and stock in trade. *Taggart v. School District No. 1,* 96 Or. 422, 188 P. 908, applies the rule that statutes in *pari materia,* that is those that are a part of a general system, relating to the same class of subjects are to be construed with reference to each other. *Umatilla County v. Williams,* 138 Or. 548, 6 P. (2d) 879, sets aside a tax deed based upon an irregular assessment made by the assessor of Umatilla County. *Portland University v. Multnomah County,* 31 Or. 498, 50 P. 532, decided in 1887, held that the county court was without authority to strike from the assessment roll prepared by the assessor property as exempt from taxation and that the board of equalization was without authority to determine whether property so assessed was exempt from taxation.

The ten decisions of this court, last above analyzed, constitute all of the cases cited by plaintiff. None of them construes or refers to an assessment made by the sheriff and tax collector. None of them indicates or suggests that the method prescribed for assessment by

the assessor is the exclusive and only method authorized by the statute.

"In the absence of special statutory authority therefor, an officer or board of equalization or review cannot, it has been held, act as an assessing body and make an original assessment or add omitted property. However, by statute in many states, power is given to·designated officers or boards to add to the assessment lists taxable persons and property omitted by the assessors; and, where such statutes exist, the particular boards or officers therein specified may make such additions as are within the scope of the authority thus conferred." 61 C. J., Subject, Taxation, p. 797, Section 1017, citing in note 13 to the point that such statutes are valid, many cases including Kirkwood v. Ford, 34 Or. 552, 56 P. 411, Ramp v. Marion Co. 24 Or. 461, 33 P. 681, Oregon Etc. R. Co. v. Lane Co. 23 Or. 386, 21 P. 964, Oregon Etc. Mtg. Savings Bank v. Jordan, 16 Or. 113, 17 P. 621; and Poppleton v. Yamhill Co. 8 Or. 337.

See also *Southern Oregon Co. v. Coos County,* 39 Or. 185, 192, 64 P. 646, and *Ankeny v. Blakley,* 44 Or. 78, 84, 74 P. 485. These Oregon cases last above cited were decided before the statute was enacted authorizing the officer having the possession of the assessment roll after its return by the Board of equalization to the county clerk to correct the assessment roll in his hands; but such authority was given the board of equalization by statute and recognized in the cases cited.

"Of the validity of a statute * * * providing generally for subjecting to taxation lands that have improperly escaped taxation in prior years, there can be no serious doubt." Excerpt from the opinion of Mr. Justice Brewer in *Winona & St. Paul Land Co. v. State of Minnesota,* 159 U. S. 526, 40 L. Ed. 247, 16 S. Ct. 83.

The judgment and decree of the circuit court is reversed and this cause is remanded for such further proceedings as are not inconsistent herewith.

---

BAILEY, J. (specially concurring.)

The question before us for decision is whether the real property here involved was assessable and taxable for the fiscal year of 1943-1944. We start with the legislative mandate that all real property within the state, except as otherwise provided by law, is subject to assessment and taxation. § 110-101, O. C. L. A., as amended by § 1, chapter 440, Oregon Laws 1941.

Insofar as pertinent here, § 110-829, O. C. L. A., as amended by § 27, chapter 440, Oregon Laws 1941, is as follows:

" * * * Taxes on real property shall be a lien thereon from and including the first day of July of the year in which they are levied until paid and, except as otherwise specifically provided by law, such lien shall not be voided or impaired. Real property subject to taxation on July 1 shall remain taxable and taxes levied thereon for the ensuing fiscal year shall become due and payable, notwithstanding any subsequent transfer of said property to an exempt ownership or use; conversely, real property exempt from taxation on July 1 shall remain exempt for the ensuing fiscal year, notwithstanding any transfer within such year to a taxable ownership or use."

Section 110-702, O. C. L. A., as amended by § 21, chapter 440, Oregon Laws 1941, provides as follows: "The county court or board of county commissioners for each county in the state shall, in July of each year, levy a tax upon all taxable property in the county * * * for the current fiscal year." By § 110-703, as amended by § 22, chapter 440, Oregon Laws 1941, the county

court or board of county commissioners is directed to levy, in July of each year, "all taxes which by law it is required to levy".

According to the provisions quoted from § 110-829, all real property subject to taxation on July 1 is taxable for the ensuing fiscal year. The property involved in this litigation was sold by Multnomah county on June 23 to the plaintiff. It thereupon was, and ever since has been, subject to taxation. Construing together the foregoing sections, it at once becomes apparent that the legislature intended that the board of county commissioners of Multnomah county should levy a tax against this property for the fiscal year of 1943-1944.

No levy is valid unless means are provided for the assessment of the property. The plaintiff admits that this real property was subject to taxation on July 1, 1943, but argues that only such real property which was subject to taxation on January 1, 1943, was assessable for the fiscal year of 1943-1944. In support of this contention, he relies on § 110-335, O. C. L. A., as amended by § 4 of chapter 440, Oregon Laws 1941, which, insofar as material here, reads as follows:

"The assessor shall procure for the county a blank assessment roll, and forthwith proceed each year to assess the value of all taxable property within the county, except such as by law is to be otherwise assessed. Said assessor shall enter in such assessment roll a full and complete assessment of such taxable property, including a definite description of the real property owned by each person therein named, on January 1 of said year, at the hour of 1 o'clock a. m."

Under the provisions last above quoted, the assessor is required to "assess the value of all taxable property

within the county, except such as by law is to be otherwise assessed.'' There is nothing contained in the portion of the section just quoted which limits the assessor, in making his assessment, to property which is taxable on January 1 at 1 o'clock a. m., but the assessment which he makes is of that date.

Major changes in our tax laws were made by the 1941 session of the legislature. These amendments have been incorporated in chapter 440, Oregon Laws 1941. The fiscal year was changed from the calendar year to July 1, to and including June 30, of the following year.

The following provisions of § 110-101, O. C. L. A., were not included in that section as amended in 1941: (§ 1, chap. 440, Oregon Laws 1941.)

'' * * * Property shall be assessed and taxed each year with respect to its status at the hour of 1 o'clock a. m. on March 1, which shall be the 'tax day' of such year. Unless otherwise provided by law, any property subject to assessment for taxes on such tax day of any year shall remain taxable and taxes levied thereon in or of such year shall become due and payable, notwithstanding any subsequent transfer of said property to an exempt ownership or use; conversely, any property exempt from assessment for taxation on the tax day shall remain exempt for the year, notwithstanding any subsequent transfer within the year to an ownership or use which otherwise would render it taxable.''

The 1941 amendments do not specifically designate any date as the ''tax day''. They do, however, provide that the status of real property on July 1 is determinative of the question whether or not it is taxable for the ensuing fiscal year; and that taxes on real property shall be a lien thereon from and including the first day of July. § 110-829, *supra*. The date as of which the

assessment is made is changed from March 1 to January 1. § 110-335, *supra*. It therefore appears from these amendments that the legislature intended to change the "tax day" from March 1 to July 1.

Section 110-829, *supra,* provides that real property "subject to taxation on July 1 shall remain taxable and taxes levied thereon for the ensuing fiscal year shall become due and payable," etc. Plaintiff asserts that the phrase "ensuing fiscal year" as there used applies only to real property which is taxable on the previous January 1, and, inasmuch as the property here involved did not become subject to taxation until June 23, 1943, it was therefore not taxable for the fiscal year of 1943-1944.

According to the plaintiff's construction of the 1941 tax law amendments, if real property was publicly owned on January 1, 1943, at 1 o'clock a. m., and was later on the same day, or at any time prior to July 1 of that year, transferred to private ownership, such property could not legally be assessed and taxed for the 1943-1944 fiscal year, and that the first time it could be assessed and taxed would be for the fiscal year beginning July 1, 1944; conversely, if real property was in private ownership on January 1, 1943, at 1 o'clock a. m., and was conveyed to a tax-exempt ownership later the same day, or at any time prior to July 1 of that year, the purchaser would have to pay the taxes thereon for the fiscal year of 1943-1944. This construction, in my opinion, is contrary to the letter and spirit of the 1941 amendments. Real property, which is subject to taxation on July 1, is taxable for the fiscal year beginning on that date, which is referred to in the act as the ensuing fiscal year.

Section 110-821, O. C. L. A., provides the method to be pursued in assessing real property that is subject to taxation, which has been omitted from the assessment roll, after the return of the assessment roll by the board of equalization to the county assessor. The board of equalization of each county is required to convene on the second Monday in May of each year to "correct all errors in valuation, description or qualities of lands, lots or other property assessed by" the assessor. § 110-401, O. C. L. A., as amended by § 8, chapter 440, Oregon Laws 1941. The property here involved was not acquired by the plaintiff until after the time fixed for the meeting of the board of equalization in 1943. Therefore, this property could not have been included in the assessment roll as presented by the assessor to the board. After the return of the assessment roll to the county assessor, this property should have been assessed for the fiscal year of 1943-1944, as provided in § 110-821, *supra.*

Section 110-829, O. C. L. A., as amended by § 27, chapter 440, Oregon Laws 1941, was further amended in 1945 by the addition thereto of the following: (Chap. 357, Oregon Laws 1945.)

"Transfer of real property from a tax exempt to a taxable ownership or use at any time between January 1 and June 30, both inclusive, of any year shall constitute notice to the transferee, owner or person in control of such property that it will be subject to taxation for the fiscal year next ensuing and it shall be the duty of such transferee, owner or person in control forthwith to advise the county assessor of any such transfer. Where the assessor shall not have been advised of any such transfer in time for him or the county board of equalization to enter the property in the current assessment roll,

as provided by law, it shall be the duty of the officer having subsequent possession and control of such roll, whether as assessment or tax roll, to make therein the proper entries of assessment and taxation of such property for such fiscal year. All assessments and tax charges so made and entered shall be as of omitted property and subject to the provisions of section 110-821, O. C. L. A. All assessments and tax charges heretofore entered in the assessment roll or the tax roll of any year, covering real property so transferred from a tax exempt to a taxable ownership or use, hereby are declared to have been made regularly and lawfully.''

This amendment is merely a clarification of § 27, chapter 440, *supra*. It does not give to the assessor or sheriff any additional powers. It does not purport to amend § 110-829, *supra,* which provides, among other things, that ''real property exempt from taxation on July 1 shall remain exempt for the ensuing fiscal year, notwithstanding any transfer within such year to a taxable ownership or use'', nor § 110-335, *supra,* relating to the duties of the assessor in making his assessment.

I am therefore of the opinion that the demurrer to the complaint should have been sustained and the suit dismissed.

LUSK, J. (dissenting).

The question in this case, as I understand it, is whether statutory authority existed during the period involved to make the threatened assessment. It cannot be doubted that without a valid assessment there can be no valid tax, and that no person or property is subject to taxation unless within the terms or plain import of a taxing statute. 51 Am. Jur., Taxation, 614, § 647. The assessor is directed by § 110-335, O. C. L. A.,

as amended by § 4, Ch. 440, Oregon Laws, 1941, "to assess the value of *all taxable property* within the county except such as by law is to be otherwise assessed" (italics added). The assessment must include "a definite description of the real property owned by each person therein named (i. e., in the assessment roll), on January 1, of said year, at the hour of 1 o'clock a. m." Under the plain language of § 110-829, as amended by § 27, Ch. 440, Oregon Laws, 1941, the real property in controversy, being owned by Multnomah County on July 1, 1942, was exempt from taxation on that date and throughout the fiscal year 1942-1943; hence, it was not "taxable property" on January 1, 1943, and the assessor was without legal authority to assess it as such as of that date. He correctly listed it as property owned by Multnomah County and exempt. The statutes invoked as giving him or the sheriff such authority (§§ 110-820 and 110-821, O. C. L. A.) in my opinion do not have that effect, because these statutes were merely enacted to enable errors to be corrected and omissions to be supplied. But here nothing was omitted and no error was made. Any officer assuming to act under those provisions in the instant case would necessarily erase the truth and substitute therefor an untruth; for, if his act were to be given any effect at all, he would have to list the property in the assessment roll as in private ownership on January 1—the only date as of which there is statutory authority for the assessment. The defendant concedes, and it is a proper concession, that unless the property be assessed as of January 1 constitutional provisions prescribing uniformity and equality of taxation would be violated.

To me it is apparent that when in 1941 the legislature made the changes in our tax laws, to which atten-

tion has been specifically called in the specially concurring opinion of Mr. Justice BAILEY, it left a hiatus in the law with respect to the assessment of real property passing from an exempt to a taxable status between January 1 and July 1. That oversight, it would seem, has been corrected by Ch. 357, Oregon Laws, 1945, which expressly provides for the assessment of such property, and that "all assessments and tax charges so made shall be as of omitted property and subject to the provisions of § 110-821, O. C. L. A." It is not contended that this enactment governs the present case. It serves, however, to emphasize the deficiency in the 1941 legislation. The legislature, of course, could supply that deficiency; this court has no power to do so.

One might readily agree that there is no good reason in legislative policy why the plaintiff's property should be permitted to escape taxation for the year in controversy. But that consideration does not justify us in holding that it has not escaped if the foundation of the tax—an assessment made pursuant to lawful authority —is wanting. It would no doubt be conceded that an improvement placed on land between January 1, 1946, and July 1, 1946, could not, under existing legislation, be taxed for the fiscal year commencing July 1, 1946, notwithstanding that it comes within the literal terms of § 110-101, O. C. L. A., that "all real property within this state * * * shall be subject to assessment and taxation". Such an improvement would escape taxation during the fiscal year 1946-1947, not because there is any reason of policy for exempting it, but simply because it was not "taxable property" on January 1 and therefore not assessable. An attempt to have it included in the assessment roll as "omitted property" would assuredly fail in the courts. And, since the legis-

lature has made provision for the assessment as of January 1 of "taxable property", and no other, I can see no difference between the case supposed and the one which we are deciding.

I therefore respectfully dissent from the judgment of the court.

BELT, C. J., concurs in this dissent.

---

ROSSMAN, J., dissenting.

We need to remind ourselves that proceedings for the levy of a tax are in *invitum*. All statutes which authorize the imposition of a tax are construed strictly against the government. No tax can be assessed without clear legislative authority for its imposition. Doubts are resolved, not against the property owner, but against the government. Normally no official except the assessor possesses authority to assess a tax against real property. It is the assessor who prepares the assessment roll. The only statute which authorizes a sheriff to levy a tax is § 110-821, O. C. L. A. It confers upon that official authority to levy taxes only against items of real property which were inadvertently "omitted" from the assessment roll prepared by the assessor. Section 110-821, referring to the assessment roll after it has left the hands of the board of equalization, says that if the officer who then possesses the roll discovers that an item of property "has, from any cause, been omitted, in whole or in part, * * * he is hereby invested with all of the powers of the assessor, board of equalization and county clerk", and may add the property to the assessment roll and levy a tax. It is manifest that the power conferred is an extraordinary one. It is equally manifest that the power is to be employed only concerning property which has been "omitted."

The property in question was not omitted from the assessment roll. It was upon the assessment roll when the latter reached the board of equalization and was still there when it left the board and came into the sheriff's hands. After the assessment roll reaches the sheriff's office it becomes known as the tax roll. The complaint, speaking of a time when the tax roll was in possession of the sheriff, says: "On or about December 16, 1943, the said assessor cancelled the purported assessment and the defendant corrected the said tax roll." Thus it is apparent that the property was not omitted from the roll and, hence, § 110-821 does not confer authority upon the sheriff to pursue the course which he threatens to take.

For the reasons just stated I cannot concur in the decision of the majority. But there are still other reasons which appear to me to be valid.

Section 2-407, O. C. L. A., which enumerates some of the disputable presumptions, includes the following: "(15) That official duty has been regularly performed." The presumption just mentioned requires us to presume that when the assessor "cancelled the purported assessment" the situation warranted his action. The reason for the assessor's action is not disclosed in the complaint, and, hence, I repeat, we must engage in the presumption that the cancellation was justified. The majority, in holding that the sheriff, acting in the four-fold capacity of clerk, sheriff, assessor and board of equalization, can disregard the assessor's action, is evidently prepared to believe that § 110-821 authorizes the sheriff to overrule the assessor. I refuse to take that step.

Section 110-821, O. C. L. A., says:

"But before making such correction or additions,

if the person claiming to own said property, or occupying it or in possession thereof, resides in the county and is not present, such officer shall give such person notice in writing of his intention to add such property to the assessment or tax roll * * * ."

The term "such officer", of course, means any officer who attempts to impose a tax after the assessment roll has left the hands of the board of equalization. It will be observed that the words just quoted make provision for notice only to a person who "resides in the county and is not present." No provision is made for notice to a person who does not reside in the county. Since § 110-821 undertakes to vest "such officer" with the authority of the clerk, assessor and board of equalization, and authorizes "such officer" to impose a tax after the assessment roll has been made up, notice is, of course, required by the demands of due process. Especially is this true, since without notice no one would have any basis for believing that he ought to avail himself of his right of appeal. Normally a property owner must keep himself apprised of the steps taken by the public officials in the assessment of taxes,. and to do so is not difficult because the officials act in compliance with statutory schedules. But how is an owner of property not mentioned upon the assessment roll to know if and when "such officer" will overrule the assessor and levy a tax against his property? He can acquire the information only by making daily visits to the courthouse. Let us remind ourselves that hundreds of parcels of property in every county do not appear upon the assessment roll. The absence of provision for notice is clearly an infringement upon due process.

For the reasons above stated, I respectfully dissent.