Argued on demurrer and alternative motions December 2, 1952,
peremptory writ ordered January 7, 1953

STATE OF OREGON ex rel., SMITH et al. *v.*
SMITH et al.

252 P. 2d 550

*Howard E. Roos,* Assistant Attorney General, of Salem, argued the cause for plaintiff. With him on the briefs were George Neuner, Attorney General, and Samuel B. Stewart, Assistant Attorney General, of Salem.

*Dan M. Dibble,* Deputy District Attorney, and *Nathan L. Cohen,* of Portland, argued the cause for defendants. With them on the brief were John B.

McCourt, District Attorney, James J. Kennedy and George D. Leonard, Deputy District Attorneys, of Portland.

*R. R. Bullivant* and *Allan Hart,* of Portland, filed a brief as amici curiae.

Before BRAND*, Chief Justice, and HAY**, ROSSMAN, LATOURETTE***, WARNER and TOOZE, Justices.

WARNER, J.

This is an original mandamus proceeding brought by the state of Oregon on the relation of Ray Smith, Carl Chambers and Robert D. Maclean, who collectively constitute the State Tax Commission of the state of Oregon (hereinafter referred to as the "Commission"). The defendants are Wiley W. Smith, as the county assessor of Multnomah county, Oregon (hereinafter referred to as the "assessor"), and Terry D. Schrunk, as the sheriff and tax collector of the same county (hereinafter referred to as the "tax collector").

The assessor assessed the value of all real and personal property situated in Multnomah county belonging to the Reynolds Aluminum Company (hereinafter referred to as the "Company") for the tax year 1951 in amounts totaling $7,099,145. Thereafter, the Company petitioned the Multnomah county board of equalization for a reduction of these values. Its petition was denied, and the Company on July 3, 1951, applied to the Commission for relief.

While this appeal was pending, the assessor on October 12, 1951, turned over the assessment roll to

---

\* Chief Justice when this case was argued.
\*\* Died on December 19, 1952.
\*\*\* Chief Justice when this opinion was rendered.

the tax collector; and on November 14, 1951, the Company paid the sheriff the amount of the tax charged to it, less the discount allowed by law.

The Commission held a hearing on the Company's appeal on October 16, 1951, and on March 27, 1952, issued its opinion and order No. AT-52-4 modifying the 1951 assessment roll. The order predicated upon the opinion referred to reads:

"NOW, upon the statement of facts, issues and evidence, and the opinion set forth herein and due consideration having been had, it is hereby,

"ORDERED, that the present assessed valuation as shown on the assessment roll, insofar as appellant is concerned, be and the same hereby is modified in the following respects:

"1.  That the assessed valuation of the personal property be reduced from $4,574,865 to $4,117,380.

"2.  That the assessed valuation of the improvements be reduced from $2,404,280 to $2,163,850.

"3.  That the assessed value of the land be reduced from $120,000 to $34,200."

The various assessments fixed by the assessor, requested by the Company and ordered by the Commission are summarized for comparison as follows:

| | Fixed by Assessor | Requested by Company | Ordered by Commission |
|---|---|---|---|
| Land | $ 120,000 | $ 44,969.98 | $ 34,200 |
| Improvements | 2,404,280 | 1,851,284.25 | 2,163,850 |
| Personal property | 4,574,865 | 2,786,592.49 | 4,117,380 |
| Total | $7,099,145 | $4,682,846.72 | $6,315,430 |

On April 1, 1952, the Commission transmitted its opinion and order to the assessor with the following letter:

"Enclosed herein please find a copy of State Tax Commission's Opinion and Order, At-52-4 and At-52-5 regarding the assessed valuation of the property of Reynolds Aluminum Company and Reynolds Metals Company respectively.

"Trusting that you will take such steps as are necessary to comply herewith, we are

"Very truly yours".

A copy of the order of March 27 was sent to the tax collector on April 21, 1952. Both of the county officers named refused to comply.

An alternative writ of mandamus was issued in this matter on the application of the Commission and served upon both defendants, commanding them to perform immediately their several and respective duties by adjusting the assessment roll of properties in accordance with the opinion and order of the Commission dated March 27, 1952, or show cause in this court why they had not done so.

The assessor and tax collector made separate returns to the writ. Their answers are substantially the same in content and form. After making certain admissions and denials, each answer sets up eight separate defenses. These they summarize with the statement that "an absolute lack of jurisdiction in the Commission over the Assessor and Tax Collector is the basic contention raised by the defendants."

The Commission demurred to these returns on the ground that each separate defense failed to state sufficient facts to constitute a defense and, in the alternative, moved for judgment on the pleadings.

The writ poses two questions. First, has the Com-

mission power to make the order in question? Second, is the order mandatory upon the assessor and tax collector?

It is well to observe at the outset that the defendants do not challenge the validity of the statutes which vest the Commission with power to act in matters of this kind, nor do they make any contention that the property which is the subject of the order is not amenable to the jurisdiction of the Commission.

When we examine the eight separate defenses, we find that certain of them have elements in common. This permits a convenient grouping in terms of these relationships as follows:

First    Defenses one, two, three and eight challenge the authority or *jurisdiction of the Commission* to make the instant order, either as a mandatory direction to the defendants or to make such order as of the date and in the form made.

Second   Defenses four, five and six have a common purpose in assailing *the methods employed* by the Commission in determining the valuation reflected by its order.

Third    The seventh defense rests upon the claim that this proceeding is *moot.*

We shall consider and discuss the several defenses in terms of the grouping which we have made above.

### *Defendants' First, Second, Third and Eighth Defenses*

The gravamen of the defendants' first defense is that the Commission's order imposes no direction, instruction or duty upon either of them with reference

to or pertaining to the assessments against the Company's properties for the tax year of 1951-1952.

The gist of defendants' second and third defenses, taken together, may be stated as follows: The order of the Commission is unlawful and void insofar as the Commission was without lawful authority to impose any duty upon the defendants to alter or amend the assessment roll of 1951 and for the further reason that defendants had no duty or authority to alter the roll. We will later make a fuller reference to the eighth defense.

Both defendants concede that the Commission is an agency superior to the assessor. The tax collector, however, asserts that he is beyond the reach of the Commission's authority in the instant matter.

By their answers, both defendants admit that they had actual notice of the Commission's opinion and order of March 27, 1952, by reason of its transmission to the assessor on April 1, 1952, and to the tax collector on April 21, 1952.

The alternative writ commands them "to adjust the assessment roll of properties located in Multnomah County, Oregon, in accordance with the order and direction of the State Tax Commission as contained in its Opinion and Order AT-52-4, dated March 27, 1952 * * *." The objections made against the form of the Commission's order are obviously not applicable to the form of the writ, which, in our opinion, is sufficient and adequately supplies whatever may be claimed to be deficiencies in the form of the order.

The first reason assigned by the defendants in support of their first defense rests upon the erroneous assumption that an order from the Commission, like the one here, must be addressed to the defendants by name

or title and must include a further mandatory direction to implement the order mechanically, in a manner reflecting the modified assessment on the tax roll.

■■ Generally, a public administrative body in the performance of its quasi-judicial functions operates unhampered by technical exactness in pleadings and procedures or in respect to the form in which its orders and final determinations are expressed. By reason thereof, orders of such bodies are liberally construed to effectuate the intent of the body issuing them. This rule is well expressed in 73 CJS, Public Administrative Bodies and Procedure, 475, § 143, where it is said:

> "While an order or regulation providing for punishment for violation thereof must be strictly construed, generally the orders of administrative bodies should be liberally construed, in order to effectuate the legislative intent, so as to make them operative if possible, particularly where such bodies are composed of men unlearned in technical requirements; and they should be so interpreted as to prevent conflicts with statutes, rules, or ordinances, provided such interpretation does no violence to the language used."

Also see *State v. Public Service Commission of Missouri*, 232 Mo App 1018, 114 SW2d 161, where it reads at page 167:

> "Courts do not view the orders of the Commission technically, but they are to be liberally construed so as to make them operative if possible. State ex rel. v. Public Serv. Comm. of Missouri, supra, 277 Mo. 175, loc. cit. 192, 193, 210 S.W. 386 * * *."

In *La Grange Hydraulic Gold Min. Co. v. Carter*, 142 Cal 560, 76 P 241, plaintiff challenged an increased assessment of its properties because of the informality

of the order of the board of equalization directing the increase. In holding against the taxpayer, the court observed (76 P 243):

"* * * If we were to adopt the rule contended for by appellant as to acts of boards of supervisors, boards of equalization, and other inferior tribunals, and hold them to exact and apt expressions framed in proper legal terms, and set aside all acts not so expressed, it would result in nullifying most of the acts of such boards. * * *."

It is well to note at this point that the "assessment roll" and "tax roll" in this state are, in fact, the same record. While in the official custody of the assessor, it is legally designated as the assessment roll; but when it is legally delivered by that officer to the tax collector, it is by that act converted into the tax roll. § 110-804, OCLA. We will, however, hereinafter refer to it as the assessment roll, irrespective of who has official possession of the record.

The only place where an increase or decrease in an assessment as corrected can be finally and effectively recorded is on the face of the assessment roll. The only officer charged with that duty is the assessor, if the roll is still in his possession and control; but if he has delivered it to the sheriff in his capacity as tax collector, then by the assessor and the sheriff acting in conjunction with each other. This is made plain by § 110-820, OCLA, as amended by Ch 69, Oregon Laws, 1949, which provides:

"Whenever the tax collector discovers that any property has been assessed more than once for the same year, he shall collect only the tax justly due thereon, and shall make return to the county court of the balance as double assessment, and shall be properly credited therefor; *and whenever, at any stage in the collection of taxes, the officer having*

*charge of the rolls shall discover errors or omissions of any kind therein, he may, with the assent and concurrence of the assessor,* properly correct the same to conform to the facts in whatever manner may be necessary to make such assessment, tax or other proceeding whatsoever regular and valid, such correction to be made in red ink, or otherwise distinguished, and to be signed with the initials of the officer making the same and the date of such correction.'' (Italics ours.)

*Moe v. Pratt, Sheriff,* 178 Or 320, 325, 166 P2d 479, is cited as exonerating the assessor from any duty to make the corrections on the roll as required by § 110-820, OCLA. It is urged on the ground that the assessor did not have possession of the roll at the time of the Commission's order. The Moe case was decided in 1946 and is, therefore, inapplicable. Section 110-820 was originally enacted by Ch 267, General Laws, 1907. The amendment by Ch. 69, Oregon Laws 1949, was after the Moe decision and was the only change in § 110-820 since 1913. The amendment of 1949 was limited to the insertion of the words "with the assent and concurrence of the assessor", and was apparently to correct the very situation revealed by our holding in *Moe v. Pratt, Sheriff,* supra.

Defendants also seek to avoid the mandate of the foregoing code section by giving to the words "errors or omissions of any kind" a narrow and restricted construction which would limit its application to mere clerical errors. To so construe § 110-820 would preclude the effectiveness of any order of the Commission which has as its object the increase or decrease of any assessment, as validly determined by that body.

■ The prime function of § 110-820 is to make the assessment roll "conform to the facts in whatever manner may be necessary to make such assessment,

tax or other proceeding whatsoever regular and valid * * *." In short, the purpose is to give verity to the record. An assessment too high or too low, whether made by the assessor or board of equalization, would fall short of conforming to an assessment at the "true cash value" and would be wanting in the attributes of the regularity and validity which the record must legally reflect. The inclusion of errors "of any kind", in our opinion, expands the power to correct the record beyond the limitations of mere clerical errors.

■ "Error", as employed in § 110-820, OCLA, comprehends errors in fact. In the terms of the lexicographers, an "error" is "An act involving a departure from truth or accuracy; * * * a mistake; an inaccuracy; as, an *error* in * * * calculation * * *." Webster's New International Dictionary. The "fact" of interest here is the true cash valuation of the Company's property which, in the event of an appeal from the values established by the assessor or the county board of equalization, is finally determined by the Commission.

■ To the extent that the Commission determines a different "true cash value", then such values previously made by the assessor or county board of equalization may be said to constitute an "error" in the assessment roll which should be corrected by the proper county officials in the manner provided by § 110-820 in order to "conform to the facts". In this matter, the facts to which conformity was necessary are the values determined by the Commission's order of March 27, 1952. The Commission's order is the media by which the tax collector "discovers" the error which in this matter he is bounden to respect in the manner provided by that section. The act of making the correction required by the Commission's order does not

involve the exercise of discretion or judgment upon the part of either defendant. No words can be found in the statutes prohibiting the making of proper corrections *whenever* they are discovered or directed.

The foregoing construction of § 110-820, OCLA, does not embrace the idea that *any alleged errors* in assessed valuations, other than those arising from clerical mistakes, can in the first instance be corrected by the county officials designated in that section. Errors other than clerical errors, exemplified by errors in the determination of the true cash values of the property assessed, can only be corrected as a result of a review thereof made in appropriate proceedings had before boards of equalization, the State Tax Commission or the courts, and then only in the manner and to the extent of the order of any of those bodies when such order is final and not subject to further appeal.

We have heretofore held that when an assessor has notice of a lawful determination of assessed values made by superior authority, he is bound to implement the same of record on the assessment roll. *Florey v. Coleman,* 114 Or 1, 6, 234 P 286. We think that this rule is equally applicable to a tax collector when the rolls are in his official possession.

The order of the Commission, coupled with the notice thereof which the defendants admit having received, was, in our opinion, sufficient authority to the assessor and tax collector to proceed under the provisions of § 110-820, OCLA, and to correct on the assessment roll any errors in valuation revealed by that order; and that it imposed upon them a duty to comply therewith, if it can also be said that the Commission's order was timely and that the tax collector is amenable to the Commission's direction.

We now address our attention to the question of whether or not the defendant tax collector is under the supervisory and directional control of the Commission in matters of this kind. Our query is necessarily limited to the status of the tax collector in this respect, because the assessor's responsiveness to the Commission's control and direction was established beyond any doubt by this court in *State ex rel. Galloway v. Watson,* 167 Or 403, 118 P2d 107, where we said at page 413:

"It is clear that an order, conformable to law, made by the State Tax Commission with reference to the administration of the laws of assessment and taxation when issued by the State Tax Commission and directed to a county assessor or county board of equalization, is mandatory and should be obeyed by the officer or board to which it is addressed. Section 110-601 and section 110-603, Vol. 7, O. C. L. A."

Also see page 417.

■ In arriving at the legislative intent respecting the duties of the tax collector in the instant matter, a given act should be read with all statutes relating to the same subject matter and effect given to every word, phrase, sentence and section of all such statutes, if that be possible. *O'Donnell et al. v. Scott,* 176 Or 500, 503, 159 P2d 198; *Stowe v. Ryan,* 135 Or 371, 386, 296 P 857; *James et al. v. City of Newberg et al.,* 101 Or 616, 619, 201 P 212. With this rule of construction in mind, we turn to an examination of those statutes particularly pertinent to the question raised in behalf of the defendant tax collector.

Section 110-505, OCLA, (originally § 4 of Ch 218, General Laws of Oregon, 1909, later re-enacted by § 2 of Ch 586, Oregon Laws 1951) defines the duties

of the Commission. Insofar as this section relates to assessments and the powers with respect to assessors and tax collectors, the salient features are reflected by the following subsections of said § 2:

"(1) To have and exercise general supervision of the system of taxation and *collection* of public taxes and revenues throughout the state and to establish and maintain *uniformity of assessment* among the several counties of the state in respect to the appraisal and fixing of property values.

"\* \* \* \* \* \*

"(3) To see that all taxes due the state, counties and municipalities are *collected.*

"(4) To prescribe all forms of books and blanks used in the *assessment and collection of taxes* not otherwise prescribed by law, and to change the forms of blanks and books prescribed by law in case change shall be necessary.

"(5) To construe the *tax* and revenue laws of the state whenever requested *by any officer acting under such laws,* or by any interested person, and to instruct such officers in relation to their duties with reference to *assessment* and taxation, and *collection of public taxes and revenues. Assessors,* county boards of equalization and *tax collectors* shall submit to the State Tax Commission all questions arising with them which affect the construction of tax and revenue laws of the state.

"(6) To issue regulations, bulletins, manuals, instructions and directions to the *county assessors,* county boards of equalization and *tax collectors* as to the methods best calculated to secure uniformity in the system of assessment and collection of taxes, to the end that all property shall be assessed and taxed as required by law, and to prescribe blank forms of reports for that purpose.

"(7) To examine all books and papers of account, and to require any person to appear before such commission, or any member thereof, and to interrogate such person under oath or otherwise

for the purpose of enabling the commission, any *county assessor,* county board of equalization or *tax collector* to obtain all information that could in any manner aid it or him in arriving at the valuation of any property, franchise or special franchise.

"(8) To see that penalties are enforced when prescribed by any tax or revenue law of the state for disobedience to its provisions, and to see that complaint is made against persons or corporations violating any such law. In the execution of these powers and duties the said commission, or any member thereof, may call upon the prosecuting attorney or the Attorney General, who shall institute and conduct prosecutions for penalties and forfeitures, liabilities and punishment for violation of the laws of the state in respect to the assessment and taxation of property, or the *collection of public taxes and revenues.*

" * * * * *

"(11) To carry on a continuing study with the object of equalizing for the purposes of assessment and taxation property values within the counties and between the counties and to recommend to the Legislative Assembly, at each regular session thereof, such amendments or modifications of the constitution or laws as may seem proper or necessary to remedy injustice or irregularity in taxation, or to facilitate the assessment and *collection of public taxes and revenues.*

"(12) To see that complaints concerning the law may be heard and that information as to its effects may be collected, that *all revenue officers comply with the law,* and all violations thereof be punished, and that all proper suggestions as to amendments may be made.

"(13) To require from any state, *county* or municipal *officer, whose duties pertain to the assessment,* apportionment, levy or *collection of taxes* and public revenues, or the disbursement of public funds, reports and statements, in such forms as

the commission may prescribe, as to any matter deemed material and relevant to the attainment of uniformity in the assessment and collection of taxes and public revenues.

"* * * * * *

"(16) To carry on at its own expense a program of inservice training for the *assessors* and *tax collectors* of the various counties by periodically distributing to them bulletins prepared and published by the commission pertaining to the principles and practices of assessment, apportionment, levy and collection of public taxes, by periodically distributing to them lists of selected readings in the fields of assessment and taxation and by establishing and conducting classes of instruction for *county assessors* and *tax collectors* in the principles and practices of assessment and collection of public taxes as in the opinion of the commission may be expedient and beneficial to the needs of the state and the advancement of the tax assessing and tax collecting profession." (All italics ours.)

It is not without significance that reference is made to the tax collector or the tax-collecting function in each of the foregoing subsections of § 110-505, OCLA, defining the duties of the Commission. Subsequent to the adoption of § 110-505, the legislature enacted Ch 465, General Laws of Oregon, 1929. Our attention has not been directed to anything contained in Ch 465, hereinafter more fully referred to, or elsewhere, which in any manner limits or lessens the duties therein imposed upon the Commission. To the contrary, Ch 465 expands the powers of that body.

The title as a part of a legislative act is also a valuable aid in the determination of the legislative intent. *Kidder v. Nekoma Lumber Co.*, 196 Or 409, 249 P2d 754, 758, and cases there cited.

The title to Ch 586, Oregon Laws 1951, which re-

enacted § 110-505, OCLA, in its present form, reads, so far as pertinent: "Relating to the powers and duties of the State Tax Commission and other officials; providing for the assessment for taxation of certain property by the State Tax Commission and *the levying and collection of taxes thereon * * ***." (Italics ours.)

Ch 465, General Laws of Oregon, 1929 (codified as §§ 101-601—110-612, inclusive, OCLA), was entitled:

"To provide additional power and impose additional duties upon the state tax commission, the county assessors *and other public officers* and persons, firms, associations and corporations with reference to the assessment and equalization of property for purposes of taxation, and the levy and *collection of taxes thereon*; providing for an appeal, and providing a penalty for the violation thereof." (Italics ours.)

Section 110-601, OCLA (§ 1 of Ch 465), reads:

"*The state tax commission of the state of Oregon hereby is authorized to exercise general supervision and control over the administration of the assessment and tax laws of the state,* over county assessors, and county boards of equalization, in the performance of their duties relating to taxation, and to do and perform any act, to give any order or direction to any county board of equalization or to any county assessor as to the valuation of any property, or class or classes of property, in any county, which, in the commission's judgment, may seem just and necessary, to the end that all taxable property in this state shall be listed upon the assessment rolls and valued and assessed according to the provisions of law, and equalized between all taxpayers and between the different counties of this state, and between the different taxing units, so that equality of taxation shall be secured according to the provisions of law." (Italics ours.)

Reading § 110-601 against the objectives of the act as defined by the title of the act from whence that section springs and reading in pari materia with the first and basic enactment of 1909 and as the act of 1909 was subsequently amended, we hold that the legislative intent was to make all county tax collectors amenable to the general supervision and control of the Commission to the extent that such supervision and control is necessary for the proper accomplishment of the duties vested in that body.

This conclusion is fortified by the language of that part of § 110-605, OCLA (§ 8 of Ch 465, General Laws of Oregon, 1929), reading: "It shall be the duty of *every public officer* to comply with any lawful order, rule or regulation of the tax commission made under the provisions of this act, and * * *." (Italic ours.)

It will be noted that the part of the foregoing quotation ending with the words "under the provisions of this act" is separated from the rest of the section by the employment of a comma and the conjunction "and". The provisions which follow the comma and the conjunction are complete in themselves, thereby indicating that they were intended by the legislature to be separate and distinct. Thus the conclusion is inescapable that the tax collector is one of that class referred to in the first clause of § 110-605 as "every public officer".

To hold that a tax collector is not responsive to the directions of the Commission after the assessment roll reaches him officially and to say that he has no duty to correct the rolls in his possession in accordance with any increase or decrease directed by order of the Commission would not only result in denying the county the benefit of the additional revenue flowing from such enhanced values but, in the case of a

lowered assessment, would deny to the taxpayer such refunds as he might be entitled to under laws permitting claims for reimbursement for overpayment of taxes. More important, however, is that if we adopt the defendant tax collector's construction of the statutes hereinabove considered, it would be to render the legislative objective inoperative, if at the time of the Commission's directive the tax collector was the sole custodian of the tax roll and, as he claims, was immune to the Commission's direction.

As was well said in *Hudson Motor Car Co. v. Detroit*, 282 Mich 69, 275 NW 770, 113 ALR 1472, 1478:

"* * * Review of assessments by local assessing officers and of the action of local boards of review by the State Tax Commission would serve no useful purpose if no change in the assessment roll could be made; and no change in the assessment roll made by the State Tax Commission would be of any importance if the tax levied and assessed upon such valuation was not to be changed. * * *."

Both defendants raise a question about the timeliness of the Commission's order. Both contend that on March 27, 1952, the Commission had no authority or jurisdiction to impose upon either of them, jointly or severally, any duty to alter any valuation appearing on the 1951 Multnomah county tax rolls.

The defendant assessor argues that since the assessment roll was delivered to the tax collector not later than October 15, 1951 (as required by § 110-804, OCLA), he is released from all duty to do anything further in connection therewith. This contention by the assessor is answered in the negative by the provisions of § 110-820, OCLA, and our holding in *State ex rel. Galloway v. Watson*, supra, 167 Or 403.

The defendant tax collector, speaking for himself, claims that the voluntary payment of taxes made by the Company on November 14, 1951, relieves him of any duty to make the mandated correction.

These positions of the parties are reflected in part in the respective first and second defenses, and arguments made in support thereof, and also by that part of paragraph II of their eighth defense, reading:

"That from a date long prior to October 12, 1951, more particularly from on or about July 3, 1951, there was and continued to be available to the Commission remedies at law speedy, adequate and complete to cause to be executed and enforced any lawful Order by it issued pertaining to the appeals of the Company from the Orders of the Board of Equalization. That in wilful disregard of the requirements of law of and pertaining to the assessment equalization and collection of taxes, the Commission did omit, fail and neglect to hear, determine and act upon said appeals of the Company until after the determination, allocation, collection and disposition of taxes in Multnomah County. * * *."

We observe again that no attack is made upon the jurisdiction of the Commission to make an order of the kind here involved as of a date prior to the delivery of the assessment. On the other hand, a loss of jurisdiction is claimed by what the defendants assert was the Commission's wilful delay in acting on the appeal of the Company until after the "determination, allocation, collection and disposition of taxes in Multnomah County." It is a claim tantamount to estoppel by reason of laches.

The record here indicates that notice of appeal from the adverse ruling of the board of equalization for Multnomah county was timely given by the Com-

pany, that the appeal was perfected on July 3, 1951 (§ 110-609, OCLA, as amended by § 2 of Ch 98, Oregon Laws 1949), and that a hearing on the appeal was had before the Commission on October 16, 1951, followed by its opinion and order of March 27, 1952.

The eighth defense is premised upon an evident assumption that in the various lapses of time between the perfection of the Company's appeal and the hearing and between the day of the hearing and the final order, the Commission took no action in the matters of investigation or deliberation before making its order. There is nothing before us to sustain such a conclusion. If any presumption can be indulged in, then we must conclude that the official acts of the Commission were regularly performed.

However salutary or desirable it might be to have appeals heard and orders made thereon at an earlier date than was done in this instance or at times which would permit the proper county officers to take recognition thereof and correct the assessment rolls accordingly before taxes were levied or collected, such argument should be addressed to the legislature. We are unable to find any legislation which establishes any time within which the Commission must hear or determine an appeal. Section 110-821, OCLA, contains the only express limitation on the exercise of the Commission's supervisory powers, and this is a five-year limitation relating to the placing of omitted property on the rolls. In *State v. Johnson,* 80 Or 107, 116, 156 P 579, Mr. Justice HARRIS quoted with approval from *Hooker v. Bond,* 118 Mich 255, 76 NW 404, where it was held:

"Jurisdiction is not lost 'by the failure of any officer to perform the acts imposed upon him within the time fixed by the law, unless the taxpayer is

deprived of some right, or unless the law, by negative language, prohibits the doing of the act at any other time.' ''

The statutes impose many different duties upon the State Tax Commission. It is one of the largest and most important administrative agencies in this state. Its functions are diverse and multitudinous in the fields of tax administration and supervision, as well as in its capacity as a quasi-judicial body. If the Commission had attained a speed in its deliberation essential to satisfy a concept of its duty in line with defendants' argument, it would have been necessary to have held its hearing and made its determination within a margin of approximately 42 days, i.e., between July 3, the date of giving notice of appeal, and August 12, the date the assesssor delivered the roll to the tax collector. This calculation assumes that the Multnomah county clerk, upon receiving notice of appeal, forthwith transmitted to the Commission the documents which he is required to send by § 110-609, OCLA.

■ The property covered by the instant order is of unique use and great value, as evidenced by the original assessment and values ascribed to it by the Commission. These are factors which alone strongly suggest the necessity for an investigation and deliberation of a character and quality not to be attained in haste, if a sound and defensible final result is to be reached. Moreover, the time formula contended for by the defendants seems to assume that the Company's appeal was one of only a few matters of like kind demanding the Commission's attention. We take judicial notice of the fact that since the enactment of the bill of 1909 creating the Commission and the later act of 1929 expanding its powers, this state has enjoyed a

great economic expansion and unusual growth in population which, with the work imposed upon the Commission as the sole administrator of the state income and excise tax laws since 1929, have greatly increased that body's burdens and responsibilities and, no doubt, have greatly enhanced its work in hearing tax appeals of all kinds. It is a conclusion made more plausible when we pause to remember that it is possible, if not probable, that at the time of the Company's appeal, other appeals may have originated in Multnomah county at the same time and were then pending, and even more from the other 35 counties of the state.

The very fact that the legislature has not seen fit to impose a time limit within which the Commission must complete its appellate work indicates to us that it recognizes the appellate burden under which the Commission may from time to time labor; the importance which it attaches to the Commission judgments formulated after mature and considered deliberation; and, lastly, because it sees no necessity for timing the Commission's orders and opinions so as to coordinate with statutory functions of county officials whose duties compel performance on definite dates.

Assuming that the Commission had acted upon the Company's appeal with all the dispatch urged by the defendants and assuming further that the Company, feeling aggrieved thereby, had exercised to the fullest and with all possible speed its rights of appeal from the Commission's order to this court, as accorded by § 110-610, OCLA, a final determination of the assessment, nevertheless, could not have been had within the periods contended for by the defendants. Moreover, had the Commission's judgment been confirmed in this court on such an appeal, it would have been followed by the same alleged evil results which the de-

fendants now claim are consequent upon the implementation of the Commission's order of March 27, 1952. This examination of § 110-610 and the possible delay in a final tax determination incident to its employment operate to confirm our conclusion that the legislature was cognizant of all the results urged by the defendants as flowing from such delays but against which, notwithstanding, it had no desire nor intention to provide.

The results produced by a taxpayer's appeal from notice of increased assessments of the previous year, as provided by § 2 of Ch 518, Oregon Laws 1951, give further denial to defendants' claim that the orders of the Commission must be made so as to integrate with certain times established by other statutes for the performance of duties therein required of the assessor or tax collector. In Ch 518 we find that taxpayer appeals of that character may be filed with the commission at any time, "not later than December 15 of the year of assessment". This new section in itself is not only a cogent and persuasive demonstration that the Commission acts without time limitation in its appellate work but gives confirmation as to its jurisdiction over the tax collector who, on the last day allowed for the perfection of the class of appeals provided for in § 2 of Ch 518, Oregon Laws 1951, has sole custody of the assessment roll and would, under the circumstances, necessarily have to act in conjunction with the assessor pursuant to § 110-820, OCLA, to correct the roll to reflect the holding of the Commission, if its order directed a variation in the amount of assessment, because of which such an appeal was undertaken.

We note in passing that notwithstanding the defendants' necessary knowledge of the pendency of the

Company's appeal, imparted by the notice thereof filed with the county clerk, the record does not reveal that either of the defendants requested the Commission to accelerate the time of the hearing in behalf of public interest or urgency.

██ Inasmuch as the defendants' eighth defense is predicated upon an erroneous concept that the Commission was legally bound to rule upon the Company's appeal prior to a "determination, allocation, collection and disposition of taxes in Multnomah County", we must hold that it is a defense without merit, and so we do as to the defendants' first, second and third defenses.

### Defendants' Fourth, Fifth and Sixth Defenses

The defendants' fourth, fifth and six defenses are united by a factor common to each of them in that they challenge the methods employed by the Commission in determining its resultant final judgment.

The essence of these several defenses is found in the following paragraphs of the return to the writ made by each defendant. Paragraph II of the fourth defense reads:

"The Commission's determination as set forth in its Order No. AT-52-4 of the true cash value of the Company's personal property, improvements and the land, is unlawful in that it fails, neglects and omits to take into consideration the earning power and usefulness under normal conditions of said property as required by Section 110-335, O.C.L.A. as amended by Chapter 440 Oregon Laws 1941."

Paragraph IV of the fifth defense reads:

"That the Commission arbitrarily, capriciously and unreasonably has disregarded the use of 88

acres of the land of the Company for an industrial site and said Commission arbitrarily, capriciously and unreasonably has failed, neglected and refused to apply elementary and basic principles of valuation required by law in fixing the assessment on the Company's land and has fixed an assessment thereof substantially less even than that petitioned for by the Company.''

Paragraph II of the sixth defense reads:

''The Commission's order will produce an inequality and failure of uniformity in the assessment of taxes of property owners in Multnomah County in that a ratio of assessed value to true value will be established for said Company contrary to and in conflict with that uniformly applied by the assessor generally to all classes of property in Multnomah County and particularly to property in Multnomah County similar to that unlawfully reduced in valuation by the Commission, all in violation of the constitution and laws of the State of Oregon.''

We entertain a grave doubt whether the defendants can properly make such a collateral attack on the Commission's order in this proceeding in their respective capacities as ministerial officers who are subordinates to the Commission or that they can, as a matter of right, challenge an order of their superior by going behind it, especially when the determination is the product of an exercise of the Commission's quasi-judicial functions. In so saying, we are not unmindful that our opinion in *State ex rel. Galloway v. Watson,* supra, 167 Or 403, appears to give some support to the defendants' claim of right to assert defenses of the character reflected by their fourth, fifth and sixth defenses. A critical examination of the Galloway decision suggests that the action of the court in giving countenance to the assessor's charges

of capricious and arbitrary action on the part of the Commission in that case was not only unnecessary to achieve the result therein attained but was not in harmony with what we had earlier said in *State ex rel. v. Tolls,* 160 Or 317, 334, 85 P2d 366, 119 ALR 1370. Also see *State v. Wiley,* 176 Wash 641, 30 P2d 958, 959, and cases there cited. As to the right of a public official to question the constitutionality of an act or order, see 16 CJS, Constitutional Law, 173, § 82; *State ex rel. Pierce v. Slusher,* 119 Or 141, 146, 248 P 358.

Whether or not an order of an administrative agency issued in the exercise of its quasi-judicial powers attains the same dignity and the same degree of protection legally accorded an order of a court of record, so as to render its validity invulnerable to a challenge made by a ministerial officer subject to its operation, is a question we need not and cannot with propriety now resolve by reason of the manner in which the defendants have by their pleading attempted to impeach the Commission's order.

The last three defenses in defendants' answers to the return above referred to are vulnerable when tested by demurrer or a motion for judgment on the pleadings in that they rest largely upon legal conclusions. *Baker Hotel v. Employees Local 161,* 187 Or 58, 64, 207 P2d 1129; *Southern Pac. Co. v. Siemens,* 77 Or 62, 67, 150 P 290; *O'Hara v. Parker,* 27 Or 156, 165, 39 P 1004; High, Extraordinary Legal Remedies 3rd ed, 451, 453, §§ 468, 472.

The ultimate test of the sufficiency of any assessment is whether it represents the *true cash value* of the property. § 110-335, OCLA, as amended by § 4 of Ch 440, Oregon Laws, 1941. In these three separate defenses now under consideration there is no allegation to be found that the values established by the

Commission are not, in fact, the true cash values. The Commission is concerned with the values assigned to the properties of the Company. If its conclusions have resulted in a determination of "true cash value", then its holding is beyond attack, and this is even more so when the challenge is made by any ministerial officer required by law to give the Commission's determination respect and application.

The three defenses last referred to are of no avail to defendants in this matter.

## Defendants' Seventh Defense

By their seventh defense the defendants urge that the instant matter is now moot. They rest this claim upon the Company's voluntary payment in November, 1951, of taxes levied in accordance with the assessor's valuations and while the Company's appeal was then pending before the Commission. It is a premise which assumes that the Company will not be entitled to a refund of any part of such taxes if our decision in this matter is in harmony with the contentions of the Commission.

The Company's right to a refund in the event of a favorable ruling here is conceded by the Commission's brief and further argued at length in a brief filed by amicus curiae on that subject. We do not think it is either proper or necessary for us to render a decision on that point. Whether the Company can enforce a claim of refund for any overplus of 1951 taxes paid is, relatively speaking, purely collateral to the matter now before us. Moreover, neither the Company nor the officials to which a claim for refund can be addressed are before the court. Those charged with the duty of making such a disbursement, if such a payment is in order, should, if they resist the Com-

pany's demand, have their day in court and be heard in an appropriate and independent proceeding.

A decision here on the Company's right to a refund is unnecessary to our conclusion and would be in the nature of obiter dicta.

■ Even if we assume, arguendo, that the Company's tax payment did, in fact, render the present controversy moot, we are, nonetheless, moved to a determination of the cause because of the evident general public interest in the result. *State v. Newbry,* 196 Or. 343, 248 P2d 845, 846; *Perry v. Oregon Liquor Commission,* 180 Or 495, 499, 177 P2d 406. Also see *State ex rel. Pierce v. Slusher,* 117 Or 498, 500, 244 P 540, 58 ALR 114, a mandamus action to compel the sheriff of Clatsop county to collect certain income taxes and wherein the doctrine respecting the public interest was applied; and 34 Am Jur, Mandamus, 830, § 35, where we find:

> "It is an accepted doctrine that courts in the exercise of their discretionary power to issue extraordinary writs will look to the public interests which may be concerned. This is true where injunctive relief is sought, and is, with equal reason, a matter which will be taken into consideration in determining whether a writ of mandamus shall issue in a particular case * * *."

One of the cardinal issues here is whether the defendants and other officials of the state holding like positions in their respective counties can now or in the future successfully repudiate an order of the Commission on the ground that they do not concur in the validity, accuracy or expediency of such an order.

*State v. Ingersoll,* 2 Wash2d 655, 99 P2d 403, is much akin to the instant case in its factual situation.

There a county assessor refused to honor an order of the State Tax Commission to reduce an assessment; and there, too, in the mandamus action to compel respect for the Commission's order, the defendant county officials asserted that the question had been rendered moot because the taxpayer had in the interim paid the tax as originally levied. In response to this, the court said, at page 406:

"* * * We think any action taken by the taxpayer and the action taken by the tax commission are separate and distinct matters, and that, regardless of the action of the taxpayer, the tax commission has the right to enforce compliance, on the part of the assessor and treasurer, with its order. We think this must be so, or the proceedings outlined by the legislature would be entirely ineffectual, and any action taken by the tax commission would be a useless thing."

We hold that defendants' seventh defense is also without merit.

Our examination of the pleadings, taken together, discloses that the defendants have no defense to the alternative writ and that their answers raise no issues of material fact. A judgment in favor of the petitioners and against the defendant is, therefore, proper. *Lytle v. Payette-Oregon Irr. Dist.,* 175 Or 276, 294, 152 P2d 934; *Milton v. Hare et al.,* 130 Or 590, 598, 280 P 511.

It is ordered that a peremptory writ issue forthwith.