Argued July 10, affirmed September 12, 1978

DOMOGALLA et al, *Respondents,*

*v.*

DEPARTMENT OF REVENUE, *Appellant.*

(TC No. 1135, SC 25558)

584 P2d 256

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was James A. Redden, Attorney General, Salem.

Larry Jon Pound, Assistant Legal Counsel, Salem, argued the cause and filed a brief for respondents.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

HOWELL, J.

## HOWELL, J.

The defendant, Department of Revenue, entered an order requiring the Marion County Assessor, the Sheriff, and the Tax Collector to change the tax roll relating to the assessment of certain parcels of real property for the tax year 1976. The three county officials filed a suit in the Tax Court to set aside the order. The Tax Court entered a decree for plaintiffs setting aside the order and the Department of Revenue appeals.

The State of Oregon is the owner of certain parking lots in Salem which are subject to ad valorem taxation under ORS 307.095(1) because they are used for parking on a rental basis. The State was dissatisfied with the assessor's valuation for the tax year 1975 and followed the usual procedure of appeal to the Board of Equalization and to the Department of Revenue. A hearing on the 1975 valuation was held by the Department on January 23, 1976, and in June, 1976, the Department issued an order substantially reducing the value.[1]

In the meantime, the assessor, as required by ORS 308.210, had prepared the assessment roll for 1976, showing the values as of January 1, 1976. The assessor used the same values for 1976 as he had used for 1975. The State did not follow the procedure required by ORS 309.100 for appealing the 1976 valuation to the Board of Equalization.

On December 29, 1976, the Department of Revenue issued an ex parte order reciting that the "State of Oregon has requested that the Department of Revenue exercise its general supervisory authority pursuant to ORS 305.090 and 306.111 to correct certain grossly excessive Marion County real property investments [sic] for the tax year 1976-1977." The order also recited "that the same circumstances exist regarding the

---

[1] Fourteen tax lots were involved. All were reduced except one, which was raised from $5,500 to $18,700.

investments [sic] for 1976 which caused the Department to correct the roll for 1975." The Department then approved the same values for the properties as were used in 1975. No hearing was conducted by the Department before it issued its order.

Plaintiffs contend that the State, as the taxpayer in this instance, was required to follow the same statutory procedure as any other taxpayer dissatisfied with an assessed valuation and therefore should have appealed the 1976 valuation to the Board of Equalization. The defendant contends that the Department had authority to issue the order of December 29, 1976, under ORS 305.090 and ORS 306.111 granting supervisory power to the defendant and ORS 311.205 relating to the correction of errors or omissions in the rolls.

■ The assessors are required under ORS 308.210 to assess the value of all taxable property as of January 1 of each year. Each tax year stands by itself, and a prior year's valuation is not binding on subsequent years. *Mittleman v. Commission,* 2 OTR 105 (1965). A taxpayer who disagrees with the value determined by the assessor must petition the Board of Equalization for review. ORS 309.100.

Prior cases have involved the situation where a taxpayer appealed a valuation for a particular year to the Board of Equalization, the Department of Revenue, and then to the courts. During the appeal process, another assessment date of January 1 arrived, and the assessor, as he is required to do, placed another property valuation on the rolls. That value may have been the same, greater, or less than the value determined for the previous year. The taxpayer, pending the final decision in the contested case, failed to appeal the subsequent year. The Department of Revenue has consistently held, and correctly so, that it does not have jurisdiction to entertain the appeal

because the taxpayer failed to exhaust his administrative remedies.[2] *See, e.g., Larson v. Dept. of Rev.,* 6 OTR 454 (1976); *Co-Operative Security Corp. v. Dept. of Rev.,* 6 OTR 419 (1976); *State Finance Co. et al v. Dept. of Rev.,* 5 OTR 651 (1974); *T & R Service v. Commission,* 3 OTR 271 (1968); *Mittleman v. Commission,* supra; 9 Will L J 193, 240-41.

The defendant does not seriously contest the proposition that failure to follow the statutory appeal procedure is fatal. However, the defendant argues in this case that it had the power to order the assessor to place the same property valuation on the 1976 roll as had been established for the 1975 roll. The defendant relies in part on what commonly has been called the supervisory power of the Department of Revenue in ORS 305.090 and ORS 306.111:

"ORS 305.090. The Department of Revenue shall exercise general supervision of the system of taxation throughout the state, and general supervision and control over the administration of the assessment and tax laws and over county assessors and county boards of

[2]We note that the problem herein is not likely to recur because the 1977 Legislature has enacted Chapter 870, and section 7 thereof provides a specific procedure for handling the problem of valuations for subsequent years pending the appeal process. After a final determination of value by the proper authority, a taxpayer who has failed to appeal the subsequent year or years may petition the Department of Revenue to order the person in charge of the rolls to make the necessary correction. In order to determine the value of the property for the intervening years, the Department may require a hearing and submission of evidence.

Section 7 of ch 870, Or Laws 1977 (now ORS 305.285) states:

"Whenever any property tax matter is appealed to the Department of Revenue, Oregon Tax Court or Supreme Court, and during the pendency of the appeal, no appeal is filed for a subsequent year or years, the taxpayer may, on or before December 15 of the year in which a final determination is made by the last body or tribunal to pass on the matter or within six months of such final determination, whichever is later, request the department to order the officer in charge of the rolls for the intervening years to correct all tax and assessment rolls for those years with respect to the property affected by such final determination. The department may require a hearing and the submission of evidence necessary to determine the correction, if any, that should be made for each intervening year in view of the holding in such final determination. Notwithstanding any time limit in ORS 311.205, the department shall order such correction as it deems necessary."

equalization in the performance of their duties relating to taxation to the end that all taxable property is assessed uniformly according to law and equality of taxation according to law is secured."

"ORS 306.111. The Department of Revenue may do any act or give any order to any county board of equalization or county assessor as to the valuation of any property or class of property which the department deems necessary so that all taxable property is assessed according to law and equalized between taxpayers, between counties and between taxing units to the end that equality of taxation according to law shall be secured."

■ Both statutes obviously were intended to give the State Tax Commission (now the Department of Revenue) authority to enforce the provisions of the Oregon Constitution, Art. I, Sec. 32, requiring that all taxation be uniform within the territorial limits of the taxing authority. ORS 305.090 requires the defendant to supervise taxation throughout the state so that all taxable property is assessed uniformly and not in different degrees or ratios depending on local authorities. ORS 306.111 gives the defendant authority to act or order as necessary to ensure that county boards of equalization or assessors assess property according to law and that assessments be "equalized between taxpayers, between counties and between taxing units to the end that equality of taxation according to law shall be secured." We do not believe that either statute was intended to allow the defendant to overlook or suspend the long-standing statutory requirement contained in ORS 309.100 that taxpayers must appeal to the Board of Equalization.

The defendant does not point to any judicial interpretation of either statute that permits it to allow a taxpayer—albeit the State—to fail to follow the statutory appeal procedure. The defendant has historically recognized that each tax year stands on its own and that the county assessor is required to assess property as of January 1 of each year. We do not believe that ORS 305.090 or ORS 306.111 was intended to allow

the defendant to permit the State, as the taxpayer, to fail to follow the appeal procedure required of other taxpayers.

Although the defendant's order relied on ORS 306.111 and ORS 305.090, the defendant also argues that it was empowered to issue its order under ORS 311.205, which authorizes the correction of the rolls for errors or omissions. That statute, in its pre-1977 form, provided:

"(1) If after the roll has been returned to the assessor from the board of equalization, the officer having charge of the rolls discovers errors or omissions of any kind therein, he may, with the assent and concurrence of the assessor or of the Department of Revenue, properly correct the rolls to conform to the facts in whatever manner may be necessary to make the assessment, tax or other proceeding whatsoever regular and valid. The officer in charge of the rolls shall make any change requested by the Department of Revenue which relates to an assessment of property made by the department. Such corrections may be made to rolls for any year or years not exceeding five years prior to the last roll so returned. No change or correction applicable to all real or personal property of the same class or in the same area shall be made to the assessment roll for the current assessment year where any request or order of the Department of Revenue issued under ORS 305.090 or 306.111 is made or mailed later than July 31 of such year. No change or correction applicable to a separate assessment of property shall be made to the assessment roll for the current assessment year where any request or order issued under ORS 305.090 or 306.111 is made or mailed later than December 31 of such year.

"(2) Notwithstanding the time limitations for corrections contained in subsection (1) of this section, the Department of Revenue may order the correction of the rolls for a separate assessment of property for any of the last two preceding years when all of the following conditions exist:

"(a) The amount of the error is in excess of $2,000 or five percent of assessed value.

"(b) The aggrieved individual has no statutory right of appeal remaining.

[ 383 ]

"(c) The aggrieved individual has notified the department of the error within one year after the error becomes *actually known to him.*

"(3) The correction shall be made in red ink, or otherwise distinguished, and shall be signed with the initials of the officer making it and shall include the date of the correction. Whenever a correction is to be made after May 1, the effect of which is to increase the assessment to which it relates, except where made by the county board of equalization or by order of the Department of Revenue, the procedure prescribed in ORS 311.207 to 311.213 shall be followed; and the provisions therein with respect to appeals shall likewise apply."

The defendant contends that the statute was intended to apply to the instant case and that it allowed the defendant to order the assessor to correct the 1976 assessment roll. The Tax Court held that ORS 311.205 did not apply and was restricted to the correction of clerical and mechanical errors made by the officer in charge of the rolls. Since the decision of this court in *State ex rel v. Smith et al,* 197 Or 96, 252 P2d 550 (1953), ORS 311.205 and its predecessors have been interpreted to mean that clerical errors may be corrected, but that errors in the determination of the true cash value of the property assessed can be corrected only through the appellate process. In fact, the 1977 Legislature amended ORS 311.205 to define the types of clerical errors which may be corrected, and specifically stated that errors in valuation judgment are not included.[3] The legislative history shows that the

---

[3] ORS 311.205 now states, in pertinent part:

"(1) Except as provided in subsection (3) of this section, if after the roll has been returned to the assessor from the board of equalization, the officer having charge of the rolls discovers errors or omissions of any kind therein, he may, with the assent and concurrence of the assessor or of the Department of Revenue, properly correct the rolls to conform to the facts in whatever manner may be necessary to make the assessment, tax or other proceeding whatsoever regular and valid. In addition, such officer shall make any change requested by the department which relates to an assessment of property made by the department.

"(2) Included in the corrections that may be made under subsection (1) of this section are clerical errors. A clerical error is an error in the

defendant itself considered ORS 311.205 to be restricted to clerical errors.[4] In addition, as we have previously mentioned, the legislature has solved the problem existing in the instant case by providing a procedure for changing the rolls for a subsequent year while appeals are pending.

We agree with the Tax Court that the defendant had no authority under the applicable statutes to order the change in the 1976 assessment rolls.

Affirmed.

records of the assessor's office which, had it been discovered by the assessor prior to May 1 of the year of assessment would have been corrected as a matter of course, and the information necessary to make the correction is contained in such records at the time the roll for the year is returned to the assessor from the board of equalization. Such errors include (but are not limited to) arithmetic and copying errors, an omission or overstatement of land value on the roll where the correct value is ascertainable from the assessor's appraisal records, and the like. Included in errors that may be corrected are changes on the roll eliminating the assessment to one taxpayer of property belonging to another on the assessment date.

"(3) Excluded from the corrections that may be made are errors in valuation judgment. Such errors are those where the assessor would arrive at a different opinion of value after the roll has been returned to him by the board of equalization.

"* * * * *."

[4]The Department of Revenue submitted the following statement to the Senate Committee on Revenue:

"January 24, 1977

"Senate Bill 199

"The Department of Revenue and its attorney are frequently called upon to apply ORS 311.205 to various factual situations where error has been made on the assessment roll. The statutory language states that 'errors of any kind' may be corrected, but the Supreme Court has stated in *Smith v. Smith,* 197 Or 96 (1953), *that clerical errors my [sic] be corrected, but errors in valuation judgment can be corrected only through the appeal process.* The reviewing body's decision constitutes the process by which the officer in charge of the roll discovers the error in judgment.

"This bill is an attempt to clarify the statutory law to reflect the Court's decision, and to give direction to assessors and tax collectors who are not familiar with the interpretative history. It attempts to give direction as to what constitutes a correctible error and a noncorrectible change in valuation judgment. * * *." Exhibits, SB 199, Senate Committee on Revenue (1977). (Emphasis added.)