Argued and submitted September 14, 1983, affirmed February 8, reconsideration denied March 23, petition for review denied May 30, 1984 (297 Or 228)

GOOSE HOLLOW FOOTHILLS LEAGUE et al,
*Appellants,*

*v.*

CITY OF PORTLAND et al,
*Respondents.*

(A8005-02678; CA A27792)

676 P2d 897

Edward J. Sullivan, Portland, argued the cause for appellants. With him on the briefs was O'Donnell, Sullivan & Ramis, Portland.

Stephen S. Walters, Portland, argued the cause and filed the brief for respondent Robert C. Warren.

Robert L. Hurtig, Chief Deputy City Attorney, Portland, attorney for respondents City of Portland and The City

Commissioners of Portland, joined in the brief of respondent Robert C. Warren.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

### YOUNG, J.

This declaratory judgment action, ORS ch 28, is before us for the second time. We did not consider the merits on the first appeal; rather, we reversed and remanded for a declaration on the merits. *Goose Hollow v. City of Portland*, 58 Or App 722, 650 P2d 135 (1982). On remand, cross-motions were made for summary judgment. The trial court granted defendants' motion and entered a judgment declaring that ORS 226.370 does not apply to the exchange of land between the City of Portland and co-defendant Warren and that Portland City Code § 3.96.060 is not applicable to the land exchange. As a result, the land exchange was approved. Plaintiff appeals. We affirm.

In 1941, the City of Portland accepted a gift of land from the First National Bank of Portland. The deed provided that the land was given "for park and playground purposes." The ordinance accepting the gift recited that the land borders Washington Park and "can be used advantageously in connection" with the park. *Goose Hollow v. City of Portland, supra*, 58 Or App at 274. In 1979, the First National Bank of Oregon, successor in interest to the First National Bank of Portland, gave the city a second deed to the donated land that removed the earlier restriction that the land be used for park purposes. The city then adopted an ordinance transferring the donated land to defendant Warren in exchange for land Warren owns on Marquam Hill.[1] The donated land was never made a part of Washington Park, nor was it developed or used as a park by the city.

---

[1] The ordinance approving the land exchange contained the following findings:

"1. The City owns certain property located on S. W. Madison Street * * * which was given to the City for park purposes.

"2. The Bureau of Parks is unable to use such property for park purposes and the expense of maintaining such property is not appropriate under such circumstances.

"3. Mr. R. C. Warren owns and is prepared to acquire certain real property that the Bureau of Parks would like to acquire for park purposes in the Marquam Nature Park Trail.

"4. An exchange of the real properties between the City and Mr. R. C. Warren has been approved and recommended by the Bureau of Parks and the Commissioner in charge.

"5. The real property to be acquired by the City is equal to or exceeds the value of the real property to be conveyed to Mr. Warren by the City."

Plaintiffs argue that ORS 226.370 requires the city to comply with a notice and sealed bid procedure before selling or otherwise disposing of the donated land. Their first claim for relief is based on the city's failure to do so; instead, the city and Warren negotiated the exchange directly.[2] Plaintiffs' second claim attacks the city's failure to give Goose Hollow Foothills League (League) thirty days' notice of the impending exchange pursuant to Portland City Code, § 3.96.060, which requires notice to neighborhood associations of city actions affecting neighborhood livability.

Defendants contend that the statutes (ORS 226.310 to ORS 226.400) do not apply to all park land, that they apply only to a sale and not to an exchange and that, if they would otherwise apply, they violate the home rule provisions of the state constitution. They argue that ORS 271.370 applies to and authorizes the exchange. Defendants also argue that the city code provisions do not apply to legislative actions and that, in any event, the ordinance approving the exchange repealed them by implication to the extent that it is inconsistent with the code. We first examine the statutes regulating the acquisition and sale of park lands.

ORS 226.370[3] is part of a statutory scheme, first enacted in 1913, and amended in minor respects in 1921 and 1935, authorizing cities with 5,000 or more inhabitants to acquire land for parks and similar uses and also land bordering parks, and regulating the disposal of the bordering lands.

[2] The trial court granted defendant summary judgment on the first claim on the ground that the elimination in 1979 of the deed restriction to park purposes took the land out of the park category. Defendants do not seriously argue for this position on appeal; it is without merit.

[3] ORS 226.370 provides:

"Before selling the neighboring lands or property acquired under ORS 226.320 to 226.360, or any part thereof or any right or interest therein, the municipal authorities of the city shall give a notice of such sale by publication for five successive days in one or more daily newspapers of the city having a general circulation therein and by posting a similar notice in two conspicuous places in or upon the property described and referred to in the notice. The notice shall describe the property to be sold and shall state any restrictions under which the property will be sold and the terms of sale. The notice shall further state that sealed proposals will be received by an officer of the city named in the notice at his office for such purchase until the day and hour named therein. At the time appointed, such municipal authority shall open the proposals and shall either award to the highest responsible bidder for the purchase of the property; or at their discretion, reject any or all bids, and readvertise in the manner provided in this section."

Or Laws 1913, ch 269; Or Laws 1921, ch 192; Or Laws 1935, Spec Sess, chs 46, 47; OCLA §§ 95-1712 to 95-1719; ORS 226.310-ORS 226.400.[4]

ORS 226.320 authorizes cities to acquire land for park and similar uses. ORS 226.330 authorizes cities to acquire "land and property in excess of what may be needed for any public squares, parks or playgrounds." ORS 226.340 limits the excess land (called "neighboring property") to that within 200 feet of a park boundary and provides that the purpose of the acquisition is "in order to protect the same by resale of the neighboring property with restrictions whenever the council determines thereon by ordinance." ORS 226.350 provides for resale of the excess lands with deed restrictions concerning use to protect the parks. ORS 226.360 governs the application of the proceeds of the resale "of any neighboring property taken in excess." ORS 226.370 requires a notice and bid procedure designed to maximize the return on the sale. Because, under the statutory scheme, a city may purchase excess lands for the purpose of reselling them with protective restrictions, sale provisions that look only to a maximum return serve a purpose they might not serve in other contexts.

ORS 226.350 and 226.360 clearly apply only to the sale of the buffer lands, called in the statutes "neighboring" or "excess" lands. Plaintiff urges that the phrase "neighboring lands or property acquired under ORS 226.320 to 226.360" in ORS 226.370 indicates that the requirements of ORS 226.370 apply to the sale of park land as well as to the sale of the so-called buffer land. However, an evaluation of this phrase in the light of the entire act produces a narrower interpretation. The statutes refer to the property purchased or sold as "land and property," ORS 226.320; ORS 226.330; ORS 226.350; as "the land," ORS 226.340(1); and as "neighboring property." ORS 226.360. All the statutes other than ORS 226.370 use "land" and "property" interchangeably and refer only to neighboring lands when they cover the sale of land or property. Statutory sections other than ORS 226.370 use both

---

[4] Because the legal voters of a city, under the constitutional guarantee of their right to enact their municipal charters, Or Const, Art XI, § 2, have the power to authorize the acquisition and disposal of park land, ORS 226.310 *et seq,* cannot properly be considered a grant of authority. *La Grande/Astoria v. PERB,* 284 Or 173, 176-78, 586 P2d 765 (1978). Rather, the statutory scheme limits municipal authority and establishes criteria that a city must meet in dealing with park lands.

"lands" and "property," either separately or together, to refer only to one category of land. The legislature treated those terms as synonyms, at times using either separately and at other times using both together in order to ensure that there would be no gaps in the kind of property covered.

■ Although the specific reference in ORS 226.370 to "property acquired under ORS 226.320" seems to indicate an intent to apply ORS 226.370 to regular park land, that reference is a result of the stylistic requirements of codifying the Act into the Oregon Revised Statutes. The legislature itself referred to "neighboring lands or property acquired under the provisions *of this Act,*" Or Laws 1913, ch 269, § 7 (emphasis supplied), and this wording continued through the compilation in OCLA § 95-1718. The natural reference of that language is to the buffer land acquired under the act, not to all lands acquired under it. The reference later in ORS 226.370 to restrictions under which the property can be sold points to the same conclusion. It fits into the scheme for selling neighboring lands while preventing uses detrimental to the parks and has no purpose with regard to the sale of actual park lands. Thus we hold that ORS 226.370 applies only to the neighboring lands acquired for buffer purposes.[5] The other statutes

---

[5] In reaching this conclusion we give no weight to the section caption. It is not a part of the statute and has no role in determining legislative intent. ORS 174.540; *Mitchell v. Board of Education,* 64 Or App 565, 567 n 2, 669 P2d 356 (1983). While a section caption is of no aid in construing a statute, the legislative title to an act may be. The title accompanies the bill as it passes through the legislature and may have some value in determining legislative intent. *See, e.g., State ex rel Smith v. Smith,* 197 Or 96, 113, 252 P2d 550 (1953). In this case, the title to the original act, Or Laws 1913, ch 269, refers only to the sale of excess land, not park land.

"AN ACT

"To authorize incorporated cities within this State having 10,000 or more inhabitants to purchase, acquire, take, use, enter upon and appropriate private property for the purpose of public squares, parks, playgrounds, or comfort stations, and for enlarging any public square, park, playground, or comfort station, within the corporate limits of such city; *authorizing any such incorporated city to purchase, acquire, take, use, enter upon and appropriate more land than may be needed for any such public squares, parks, or playgrounds, with authority to re-sell the remainder of such land and to impose restrictions in the deeds of re-sale;* and declaring the taking, using and appropriating such private property to be taken, used and appropriated, for public use, and providing for the manner of ascertaining, awarding and paying compensation and damages in all cases where property is taken, used and appropriated for such purpose; and providing for the issuance of bonds by such cities for the payment of expense of acquiring and the cost of the property taken and appropriated, and providing for the repeal of all Acts and parts of Acts inconsistent therewith." (Emphasis supplied.) Or Laws 1913, ch 269, p 508.

provide for the purchase and disposition of neighboring lands in order to *protect a park proper*. It would be a break in the general statutory scheme if the requirements of ORS 226.370 applied to all park land disposition when no other sale provisions do. We find nothing in the statutory language which requires such an aberration.

The statutes we have considered are not the only ones applicable to the disposal of "park" land. ORS 271.310 covers the sale, exchange, or leasing of public lands in general. It specifically permits an exchange, which ORS 226.370, with its requirements for public notice and sale to the highest bidder, arguably does not. In general, ORS 271.310 is more flexible in its requirements and more adapted to the range of situations which may face a city in dealing with its park lands than is ORS 226.370. ORS 226.370 is best suited to the specific situation for which the legislature enacted it, acquiring buffer lands to protect parks, followed by the sale of some or all of them with appropriate restrictions. We are unwilling to place cities into the straightjacket of ORS 226.370 in any other context without a clearer expression of legislative intent. Because the land is not buffer land, ORS 226.370 does not apply to its disposition. The court did not err in granting summary judgment for defendants on the first claim for relief.

■ The plaintiffs' second claim for relief alleges that the city violated Portland City Code § 3.96.060[6] by not notifying

---

[6] Portland City Code § 3.96.060 provides:

"(a) General notice and public information.

"(1) City agencies shall undertake to notify all neighborhood associations affected by planning efforts that are about to begin.

"(2) Notice of pending policy decisions affecting neighborhood livability shall be given 30 days prior to decisions by city agencies to the neighborhood associations affected. If waiting 30 days may injure the public health or safety, or would result in a significant financial loss to the city or to the public, the provision for 30 days' notice shall not apply, but as much notice as possible shall be given.

"(b) Planning.

"(1) City agencies shall include neighborhood associations in all planning efforts which affect neighborhood livability.

"(2) Comprehensive plans recommended to the city or to a city agency by a neighborhood association shall be the subject of a public hearing within a reasonable time. Any changes which are proposed by the city or by a city agency shall be sent to the affected neighborhood association for consideration and for a response before final action is taken. City agencies shall cooperate with neighborhood associations in seeking outside sources of funding for neighborhood projects."

the League of its intent to exchange the property 30 days before the council's action. The code provision is an internal city directive concerning the conduct of city business. Assuming that it applies to this type of action, we find nothing in it requiring the voiding of non-complying decisions.

In any event, the city council's action in approving the exchange was adopted by ordinance, as was the code provision, and we have no basis for holding that an earlier ordinance can compel the invalidation of a later ordinance. Whether the explanation is that a specific act controls a general, *State ex rel Erickson v. Sanborn,* 101 Or 686, 694, 201 P 430 (1921), or that the later ordinance impliedly repealed the earlier to the extent of their inconsistency, *State ex rel Medford Pear Co. v. Fowler,* 207 Or 182, 195-96, 295 P2d 167 (1956), the underlying principle is clear. A legislative body cannot limit its future legislative action by a simple legislative act with no constitutional implications. Section 3.96.060 is not part of the City Charter, created no vested rights and is subject to repeal at any time. While it is questionable whether the code provision even applies to city council actions, it is clear that when the council approved the ordinance confirming the exchange of land it necessarily excused whatever compliance with § 3.96.060 was otherwise required. The court did not err in granting summary judgment for defendants on the second claim for relief.

Affirmed.